588 So.2d 1353 (1991)
Edward J. BARTO, Appellee,
v.
FRANCHISE ENTERPRISES, INC., et al., Appellants.
No. 23205-CW.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
Writ Denied January 17, 1992.
*1354 Lunn, Irion, Johnson, Salley and Carlisle by Charles W. Salley, James A. Mijalis, Shreveport, for appellants.
Norman R. Gordon & Associates by James D. Caldwell, Shreveport, for appellee.
Before NORRIS, HIGHTOWER and VICTORY, JJ.
VICTORY, Judge.
This suit arises from a serious stabbing inflicted by an employee on his supervisor resulting in an action against the employer in tort by the supervisor based on vicarious liability. This court granted a writ to review a lower court ruling which denied a summary judgment sought on behalf of the employer, Franchise Enterprises, Inc. and its insurer, Standard Fire Insurance Company.

FACTS
The plaintiff, Edward Barto, was working as shift manager at the Kings Highway Hardee's on March 21, 1989. In a deposition, Barto explained that his duties as shift manager at Hardee's included not only the supervision of the other two employees in the restaurant, but also required him to assist in preparing and serving food when the number of customers warranted his participation. Immediately prior to the incident, Barto had been preparing biscuits but went to the manager's office located at the rear of the building to get the cash register keys. Barto saw Donald E. Fletcher, the cook, leaving the office which had previously been locked.
Upon entering the office, Barto found two cash cabinets opened and saw that money appeared to be missing. Barto then locked the office and finished serving his customers. Several minutes later, Barto determined that $36.00 was, in fact, missing from the cash drawer. He then, in a professional manner, told Fletcher that he saw him leaving the office and that money was missing. Following Fletcher's complete denial, Barto told him that he wanted to give him the benefit of the doubt, but he needed to see if he had the missing stack of five dollar bills. As Fletcher began to empty his pockets, he pulled out an eight inch serrated bread knife and began repeatedly stabbing and beating Barto.
Barto sustained serious injuries for which he was hospitalized. Subsequently, Fletcher plead guilty to attempted second degree murder and received a lengthy hard labor sentence.
Barto filed this suit against his employer, Franchise Enterprises, Inc. and its insurer, Standard Fire Insurance Company, seeking compensatory damages under a theory of vicarious liability for the intentional tortious conduct of Fletcher, defendant's employee. Additional allegations relative to negligent hiring and failure to provide adequate security were made in the original petition, but were stricken pursuant to an Exception of Partial No Cause of Action filed on behalf of Franchise Enterprises, Inc. Thus, the only remaining allegations against defendants are those concerning the theory of respondeat superior.
On January 10, 1991, Franchise Enterprises, Inc. filed a motion for summary judgment asserting that it was not vicariously liable for the intentional acts of Fletcher because those acts were not employment related, nor in furtherance of the employer's interest. On February 4, 1991, the motion was argued, submitted, and denied. The judgment was signed on April 15, 1991 and no reasons for judgment were given.
Defendants sought a writ from this court, claiming the trial court erred in overruling the summary judgment. Specifically, defendants claim it was not within Fletcher's job duties to steal money or physically abuse his supervisor, thus negating a vicarious liability status.

*1355 INTENTIONAL ACT EXCEPTION
Ordinarily an employee's exclusive remedy for on-the-job injuries is worker's compensation.[1] LSA-R.S. 23:1031 and 1032. However, LSA-R.S. 23:1032(B) provides an exception to this rule for intentional torts.[2] According to the intentional act exception, neither an employer nor a co-employee who willfully causes an employee's injury can avail himself of the shield of tort immunity generally provided by LSA-R.S. 23:1032. However, the statute fails to specify whose intentional act triggers the exception. Barto's injury was caused by the intentional act of a co-employee, not by the intentional act of his employer, from whom Barto seeks recovery.
The Louisiana Supreme Court has considered this very issue in Jones v. Thomas, 426 So.2d 609 (La.1983), where it held in a 4-3 decision that the intentional act exception "should be interpreted to exclude all intentional acts from the general immunity." In essence, the court found that an employer can be vicariously liable both for its own intentional acts and the intentional acts of its employees.
We note that the majority view taken in Jones has been criticized by various legal scholars.[3] According to Malone and Johnson:
The basic question is whether an injury inflicted intentionally by one employee on the other is "intentional" from the employer's standpoint. As to him, it is probably an "accident," since the employer neither desired the consequences that followed nor knew to a virtual certainty that they would.
The opinion establishes judicially a loophole in the exclusivity provision not unlike the "executive officer" loophole. Through this remedy, a claimant may seek tort damages against his employer for work-related injuries not inflicted upon him by the intentional act of his employer. The net result will be that the cost of a group of workplace injuries not traceable to the intentional conduct of the employer himself will be borne in the tort system rather than the compensation system.
... One has the feeling that the employer community was so certain that a decision like Jones could not be reached that it declined to re-word the intentional act exception to make it clear that only the personal intentional acts of an employer would foreclose immunity.
W. Malone & A. Johnson, Louisiana Civil Law Treatise, Worker's Compensation Law and Practice, (2d ed. 1980) § 365 at 50 (Supp.1991).
Professor Arthur Larson does not approve of applying the intentional act exception to the "innocent employer, whose only connection with the intentional wrong is the most artificial and fictitious kind of technical vicarious liability." A. Larson, The Law of Workman's Compensation § 68.21 (1990). He calls the decision in Rennier v. Johnson, 410 So.2d 1149 (La.App. 3d Cir.1982), decided before Jones, but with the same conclusion and cited by the majority in Jones, as "a ridiculous holding."
Nonetheless, we are obligated to follow Jones. Therefore, Barto is not exclusively relegated to compensation benefits, but instead may pursue an action in tort against his employer for Fletcher's intentional act under the theory of vicarious liability.

COURSE AND SCOPE OF EMPLOYMENT
However, the employer's liability extends only to those acts which are within the *1356 course and scope of the injuring employee's employment. LSA-C.C. Art. 2320; Miller v. Keating, 349 So.2d 265 (La.1977); Lamkin v. Brooks, 498 So.2d 1068 (La.1986).
The Louisiana Supreme Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee, the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). An employer is not vicariously liable for the intentional acts committed by its employee unless such employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives. Scott v. Commercial Union Insurance Company, 415 So.2d 327 (La.App. 2d Cir.1982).
In LeBrane, the court considered the following factors in holding an employer liable for a supervisor's actions of stabbing his co-employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the act was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
It is not necessary that all four factors be met in order to find liability. Miller v. Keating, supra. By the same token, an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. See Tampke v. Findley Adhesives, Inc., 489 So.2d 299 (La.App. 4 Cir.1986), writ denied 491 So.2d 24 (La. 1986); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984), writ denied 463 So.2d 1321 (La.1985); Scott v. Commercial Union Insurance Company, supra. The particular facts of each case must be examined to determine whether an employee's act is within the scope of his employment. Scott v. Commercial Union Insurance Company, supra; Turner v. State, 494 So.2d 1292 (La.App. 2d Cir.1986).
In Francioni v. Rault, 570 So.2d 36 (La. App. 4th Cir.1990), writ denied 575 So.2d 371 (La.1991), an employer was not held liable for an employee's act of assault and murder of a co-employee. It was established that the co-employee was killed because she had discovered that the employee murderer, Rault, had been embezzling from the company. In affirming the employer's motion for summary judgment, the court found that Rault's function as the company's accountant did not include the embezzlement of money, thus, the murder was not employment rooted. Rault's conduct was found to be motivated by purely personal considerations entirely extraneous to the employer's interests. Even though the murder occurred entirely outside of the employment premises and working hours, this was not the determining factor of liability. As the court stated: "More important than time and location of the act is the fact that, at the time of the murder, Rault was not in the course of carrying out his employment duties." Francioni v. Rault, supra at 38.
In this same vein, an employee who was stealing goods from her employer was not found to be within the course and scope of her employment in Bessie v. K-Mart Apparel Fashions Corporation, 472 So.2d 251 (La.App. 1st Cir.1985). The K-Mart employee was participating in a scheme to steal goods with a friend who was posing as a layaway customer at the store. Citing LeBrane v. Lewis, supra, the court held that there was no rational connection in time, place, or causation to hold the employer vicariously liable, although the acts occurred on the employer's premises during working hours.
In Tampke v. Findley Adhesives, Inc., supra, an employee's widow sought damages against the employer for the murder of her husband by his co-employee. The co-employee, who was involved in a hit and run accident while driving a company truck, was fired by the plant manager, *1357 after discussing the accident. An argument ensued immediately thereafter and the manager was struck and killed by his co-employee. In finding the employee's dismissal to be the main reason for the assault, the court held that the incident could not be regarded as a "risk of harm fairly attributable to the employer's business." The court stated that the employee's actions could not possibly benefit his employer's objectives, in that he actually deprived his former employer of one of its most valued employees. In conclusion, the court found that the employee's assault was clearly motivated by his personal considerations.
Viewing the above jurisprudence, Fletcher's act of stealing money and assaulting his supervisor during an investigation is clearly beyond the course and scope of his employment. Just as in Francioni, the discovery of the theft was the primary reason behind Fletcher's assault. Barto's testimony by deposition shows that his investigation of the theft was handled in a professional and courteous manner. Fletcher's function as cook at Hardee's prohibited him from making an unauthorized entry into the supervisor's locked office and certainly did not include stealing money or assaulting his supervisor. Further, the assault was not incidental to the performance of Fletcher's employment duties. Although the assault occurred on the employment premises during working hours, it was clearly motivated by Fletcher's own personal motives in his attempt to steal money from the business. Just as in Tampke, Fletcher's conduct of stabbing his supervisor did not benefit his employer and was entirely extraneous to his employer's interests. Thus, Fletcher's conduct cannot be regarded as a "risk of harm fairly attributable to the employer's business."
A Motion for Summary Judgment is granted if the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that movant is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966(B); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). The purpose and function of summary judgments is to avoid the delay and expense of trial on the merits and to expedite the disposition of cases where it is determined that there are no genuine issues of material fact present. Greenup v. Barney, 315 So.2d 910 (La.App. 4th Cir. 1975).
It is apparent from the circumstances presented in the record that Fletcher intended his actions to harm Barto. The undisputed evidence shows that Fletcher's attack was not related to any of his employment duties, did not further his employer's objectives, was not a risk of harm fairly attributable to his employer's business, and was done for purely personal considerations entirely extraneous to his employer's interest. Therefore, under LeBrane, the employer is not vicariously liable for Fletcher's criminal assault and battery.

DECREE
Based on the evidence presented on the motion for summary judgment, we find there are no genuine issues of material fact presented, that defendants are entitled to summary judgment as a matter of law, and the trial court erred in overruling the motion. The lower court judgment is reversed and judgment is entered sustaining appellants' motion for summary judgment. All costs are assessed to appellee.
REVERSED AND RENDERED.
NORRIS, J., concurs in result only.
NOTES
[1] The record reveals that the employer's worker's compensation carrier paid Barto indemnity benefits and medical benefits as a result of the attack.
[2] LSA-R.S. 23:1032(B) provides:

Nothing in this chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
[3] The majority opinion in Jones recognized the views of commentators and other jurisdictions that would place liability on the employer for intentional torts only if the employer intended the act, not merely his employee. Jones v. Thomas, supra notes 3, 4 at 611.