606 So.2d 1376 (1992)
Laurie Katherine HENRY, Individually and as Tutrix for her minor children, James Christopher Henry and Joshua Edward Henry, Appellant,
v.
TACO TIO, INC., et al., Appellees.
No. 24112-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
*1378 Kidd-Culpepper by Paul Henry Kidd, Monroe, for appellant.
Davenport, Files & Kelly by Mike C. Sanders, Monroe, for appellee Taco Bell Corp.
Brady D. King, II, Monroe, for State Farm Ins. Co.
Charles S. Smith, Monroe, for Taco Tio, Inc.
Jack Wright, Jr., Monroe, for James and Darlene Doull.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
The plaintiff, Laurie Katherine Henry, appeals from a summary judgment in favor of Taco Bell Corporation (TBC), dismissing TBC as a defendant in a tort suit which she filed against TBC and a restaurant franchise owner who was her former employer and the father of her two illegitimate children. For the following reasons, we affirm.

FACTS
In 1985, the plaintiff was hired to work at the Taco Bell restaurant on Highway 165 in Monroe. This restaurant was one of four Taco Bell franchises owned by James Doull in the Monroe/Ruston area. (The franchise agreements with TBC were in Mr. Doull's name individually, but he operated the restaurants through Taco Tio, a corporation he owned with his wife, Darlene Doull.)
In May of 1986, Mr. Doull made sexual advances, and the plaintiff succumbed. (She now contends that she was in fear of losing her job.) The plaintiff and Mr. Doull thereafter maintained a sexual relationship which lasted almost three years and resulted in the plaintiff becoming pregnant three times.
The plaintiff's first pregnancy was terminated by abortion in August, 1986. The other pregnancies resulted in the births of James Christopher Henry (DOB6/5/87) and Joshua Edward Henry (DOB 10/1/88).
During her relationship with Mr. Doull, the plaintiff worked at his various Taco Bell franchises and eventually became a store manager. For several months in 1986, the plaintiff and Mr. Doull even lived together openly. (However, Mr. Doull moved out when he learned of the plaintiff's first pregnancy.) Eventually, Mr. Doull's wife, who lived in San Antonio, Texas, learned of the affair. Although the record is unclear as to who told Mrs. Doull, Mr. Doull believed that it was the plaintiff herself. (She denied this allegation.)
Thereafter, the Doulls offered the plaintiff a lump sum of money and assistance in obtaining a job at another Taco Bell not owned by the Doulls if she would resign from Mr. Doull's employment. According to the plaintiff, this arrangement was to remain a secret between the Doulls and the plaintiff. However, the plaintiff confided in her sister, who then called Mrs. Doull to question her about the offer.
The plaintiff claimed that the next morning, on January 17, 1989, an enraged Mr. Doull was waiting for her at the franchise where she worked. When she entered the restaurant to open it for business, he physically assaulted her. He then fired her and ordered her off the premises. The police *1379 were summoned to the restaurant. Mr. Doull was arrested for battery and the plaintiff for trespassing.
Subsequently, the plaintiff was hired at another Taco Bell in Jackson, Mississippi, on Mr. Doull's recommendation. Unlike the Doulls' franchises, this restaurant was a "company store" owned by TBC. The plaintiff claimed that her employment there was in fulfillment of her bargain with the Doulls.
The plaintiff filed suit on January 9, 1990, individually and on behalf of her two minor children. Named as defendants were Mr. and Mrs. Doull; their corporation, Taco Tio, Inc.; TBC; and the defendants' liability insurers. In a lengthy petition, the plaintiff asserted numerous causes of actions against the defendants. (However, the plaintiff has specifically resisted efforts to characterize her suit as one for sexual harassment.) As to TBC, the plaintiff asserted that it was responsible for Mr. Doull's actions because he was TBC's agent. She also contended that TBC was aware of her relationship with Mr. Doull and did nothing to protect her. The plaintiff claimed that a TBC district manager even advised her to have an abortion during her third pregnancy.
The plaintiff characterized herself as being "imprisoned by this socio-economic bondage as a minimum-wage sexual play thing." The items for which she seeks damages range from "the loss of all of those romantic, hedonistic, and material satisfactions a normal 20 year old female might expect from a traditional courtship and wedding, without children born out of wedlock," to "loss of individual dignity and the privilege in sharing in the American dream." The plaintiff also sued on the children's behalf. She claimed damages for them because of their illegitimate status, arguing that they will be deprived of a "traditional" American childhood and "an adequate and satisfactory education," and that they will probably be "second class citizens."
On February 6, 1990, TBC filed an answer in which it denied exercising any control over the daily operations of the Doull franchises or having any knowledge of the sexual relationship between the plaintiff and Mr. Doull until after the termination of the plaintiff's employment. It further maintained that the plaintiff was hired at a company store in Mississippi on February 2, 1989, upon the representations of the plaintiff and Mr. Doull that it was a normal employee relocation. She was soon promoted to assistant manager, but quit without notice in July, 1989. TBC also denied that any district manager advised the plaintiff to have an abortion.
On June 17, 1991, TBC filed a motion for summary judgment and an alternative exception of no cause of action. In connection with the motion, the parties filed into the record the depositions of the plaintiff, Mr. Doull, and Woodrow Jones, a TBC district manager who supervised the plaintiff in Mississippi.
After a hearing on July 31, 1991, the trial court granted the motion for summary judgment, dismissing all claims against TBC, with prejudice. In its written opinion, the trial court found that TBC was not the plaintiff's employer, nor was Mr. Doull an employee or agent of TBC. Furthermore, the trial court stated that it found no theory of law under which TBC could be held liable under the facts of this case.
The plaintiff appeals.

DISCUSSION
Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that movant is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (La.1992).

Deposition Testimony
The material facts relevant to TBC's motion for summary judgment are not seriously *1380 disputed. In her deposition, the plaintiff stated that she succumbed to Mr. Doull's sexual advances because she feared for her job. However, her testimony clearly established that Mr. Doull neither did or said anything from which she could have reasonably inferred that rejecting his attentions would have endangered her employment. The plaintiff also stated that she did not have any personal knowledge to contradict Mr. Doull's assertion that he did not tell anyone at TBC of their sexual relationship. Nor did she know of anyone at TBC who knew of the births of their children at the time.
The plaintiff testified that her paychecks were drawn on the account of Taco Bell, doing business as Taco Tio, and were signed by Mr. Doull. She also testified that at least within a few months of her employment she knew that Mr. Doull's stores were owned by Taco Tio, not TBC. The plaintiff, whose employment history was restricted almost exclusively to fast food restaurants, understood what a franchise was and knew that the situation was different in Jackson, Mississippi, where the stores were owned and operated by TBC.
Woodrow Jones was the TBC district manager who oversaw the Mississippi restaurants where the plaintiff worked in 1989. He testified that he was experienced in assisting with new store openings of TBC's franchises. He stated that personnel from other Taco Bell stores volunteer to help at the opening of new stores and, instead of directing the franchisee as to proper operating procedures, they follow the directions of the franchisee and assist as needed.
Mr. Jones and Mr. Doull both testified that no one in TBC management had the right to enter a franchise store and give instructions to the franchise employees. Nor does TBC have the right to hire, fire, or discipline the employees of a franchise. TBC does not pay franchise employees, nor does it withhold or pay any taxes for or on behalf of these employees. (In his affidavit, Timothy Morrison, TBC's franchise business manager, reiterated these statements.) Although the franchise agreements provide for certain uniformity among Taco Bell stores, this generally concerns the appearance of the store and the quality of the food.
Mr. Doull further testified that TBC does not own any of his four restaurant buildings or the real estate upon which they are situated. While TBC provided some general suggestions on how to conduct operations, the corporation also encouraged some originality and variety in restaurant design. When the restaurants were completed, they were not inspected by TBC personnel.
Mr. Doull also stated that he never told Mr. Jones or anyone else at TBC about his affair with the plaintiff prior to her employment in Mississippi. Additionally, he testified that it was common knowledge among his employees that his stores were franchises.

Employee/Employer Relationship
Generally an employee's exclusive remedy against his employer for on-the-job injuries is worker's compensation. Intentional torts are an exception to this rule. See LSA-R.S. 23:1032. Jones v. Thomas, 426 So.2d 609 (La.1983); Barto, supra. However, the employer's vicarious liability for the intentional torts of its employees extends only to those acts which are within the course and scope of the tortfeasor/employee's employment. Lamkin v. Brooks, 498 So.2d 1068 (La.1986); Barto, supra; Aaron v. New Orleans Riverwalk Association, 580 So.2d 1119 (La.App. 4th Cir.1991), writ denied, 586 So.2d 534 (La.1991).
In order for an employer to be vicariously liable for the tortious acts of its employee, the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely *1381 extraneous to the employer's interest. LeBrane v. Lewis, 292 So.2d 216 (La. 1974); Barto, supra. An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during business hours. Scott v. Commercial Union Insurance Company, 415 So.2d 327 (La.App. 2d Cir. 1982).
In the present case, the plaintiff's contentions raise the issue of whether she or Mr. Doull were employees of TBC. However, based upon the evidence presented to the court, we find that there was no dispute as to these material facts, and that neither the plaintiff or Mr. Doull were employed by TBC. The plaintiff was fully aware that she was employed by a franchise owned by Mr. Doull through his corporation. As a franchise owner, Mr. Doull was her employer with the sole right to hire or fire her without any interference or input from TBC. Accordingly, TBC cannot be held liable to the plaintiff as her employer.
Nor can TBC be held vicariously liable as Mr. Doull's employer. The record fails to show an employment relationship between them.
However, even assuming arguendo that there was such a relationship, none of Mr. Doull's alleged tortious conduct (i.e., battery, intentional infliction of mental distress, and sexual intercourse with the plaintiff) could possibly be construed as being in furtherance of TBC's interests. These were strictly matters pertaining to Mr. Doull's personal interests which cannot be viewed as being in the "course and scope" of an employment relationship with TBC. This is true even of the battery alleged to have occurred on the restaurant premises on the morning the plaintiff was fired.
See and compare Mays v. Pico Finance Company, Inc., 339 So.2d 382 (La.App. 2d Cir.1976), writ denied, 341 So.2d 1123 (La. 1977), wherein the court refused to hold an employer liable for its employee's rape of a prospective employee whom he drove to another city under the pretense of meeting with a supervisor to obtain permission to hire her. See also Barto, supra, where the court likewise refused to find the employer liable where an employee working as a cook in the employer's fast food restaurant stabbed a shift manager on the premises when he asked the cook about a theft of money from the manager's locked office. In both cases, the courts held that the employee's tortious conduct was personally motivated and did not benefit the employer.

Principal/Agent Relationship
Although a master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, a principal is not liable for the physical torts of a non-servant agent. Rowell v. Carter Mobile Homes, Inc., 500 So.2d 748 (La.1987). Liability for the negligent and tortious acts of another does not flow simply because of a principal-agent or principal-mandatory relationship. Only when the relationship of the parties includes the principal's right to control physical details of the actor as to the manner of his performance, which is characteristic of the relation of master and servant, does the person in whose service the act is done become subject to liability for the physical tortious conduct of the actor. Rowell, supra.
Even were we to assume that Mr. Doull was an agent of TBC, it cannot be held liable for the physical torts of a non-servant agent. Although the evidence showed that TBC exercised some influence over the general operation of its franchises, it did not exercise control over "the physical details" of the acts complained of by the plaintiff. These "acts" of having an affair with the plaintiff, intentionally inflicting mental anguish and committing a battery on her cannot be properly characterized as acts done in the service of TBC. Rowell, supra. Thus, TBC cannot be held liable under this theory of law for the tortious conduct alleged by the plaintiff.

*1382 Apparent Authority

The plaintiff asserts the applicability of the doctrine of apparent authority. However, "[a]pparent authority results from a manifestation by the principal to a third person that another is his agent. But apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." [Emphasis ours] 62B Am.Jur.2d, Private Franchise Contracts § 494. Furthermore, the third person must actually believe that the agent is authorized. Tedesco v. Gentry Development, Inc., 540 So.2d 960 (La.1989).
Apparent authority applies in situations involving a third person "who has no knowledge of or reason to believe that there are limitations on that authority...." Dart Distributors, Inc. v. Foti Enterprises, Inc., 271 So.2d 705, 707 (La.App. 1st Cir.1972).
As previously noted, the plaintiff, who eventually achieved the status of a store manager, had actual knowledge soon after her employment by Mr. Doull that she was working at a franchise, not a company store.
Additionally, the record fails to support the plaintiff's allegations of some sort of conspiracy concerning the plaintiff's transfer from the Doulls' restaurants to a company store in Mississippi. The testimony is consistent that the plaintiff's transfer was represented to TBC as a simple relocation by an employee who was moving to be closer to a family member (the plaintiff's sister).
Based on the foregoing, we find that there are no disputed issues of material fact and that TBC is entitled to summary judgment as a matter of law.
The plaintiff's assignments of error are without merit.

CONCLUSION
The judgment of the trial court granting summary judgment in favor of Taco Bell Corporation is affirmed. Costs are assessed against the plaintiff/appellant.
AFFIRMED.