741 So.2d 171 (1999)
William Les WATKINS, Individually and on Behalf of the Minor, William Logan Watkins, et ux., Plaintiff-Appellant,
v.
INTERNATIONAL SERVICE SYSTEMS, Defendants-Appellees, et al.
No. 32,022-CA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
Writ Denied October 29, 1999.
*172 Kirby D. Kelly, Shreveport, Counsel for Appellant.
Pettiette, Armand, Dunkelman, Woodley & Byrd, L.L.P. by Donald Armand, Jr., Shreveport, Counsel for Appellee International Service Systems, Inc.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., John T. Kalmbach, Shreveport, Counsel for Appellee General Electric Company.
Before WILLIAMS, KOSTELKA, DREW, JJ.
KOSTELKA, J.
After sustaining injuries in an altercation at work, William Les Watkins sought damages for himself as well as on behalf of his minor son. Claiming Watkins's sole remedy was in workers' compensation due to their statuses as employer and statutory employer, two defendants moved for summary judgment. The trial court granted those motions, dismissing the two defendants. Watkins appeals; we affirm the summary judgment as to the employer but, as to the statutory employer, we reverse the judgment and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
International Service Systems, Inc. ("ISS") provided janitorial services for the General Electric Company ("GE") transformer plant in Shreveport. William Les Watkins, plaintiff in this matter, served as supervisor of the crew on which Maurice Henderson served. During the early morning hours of the January 26, 1996 shift, a GE employee asked Watkins which ISS employee had cleaned the area near his locker. Three radios were missing from the GE employee's locker. Watkins *173 responded that Henderson had cleaned the area. Also, Watkins had seen three radios in the storage closet where Henderson kept his supplies. Thus, after confirming that the radios belonged to the GE employee and waiting until near the end of the shift, Watkins approached Henderson. Henderson denied any knowledge of the radios and stormed off angry. Watkins later sought out Henderson in an effort to calm him down and inform him that he would be suspended pending an investigation of the theft. Henderson responded by attacking his supervisorpunching and kicking Watkins until someone stopped him. Henderson admits that his actions, as well as the results (severe injuries to Watkins), were intentional.[1]
Due to a temporary disability, Watkins collected workers' compensation benefits for a period of time. Seeking further compensation for his continued pain and suffering, he has now filed suit in tort against ISS, GE, and Henderson. Both ISS and GE responded to the suit with motions for summary judgment. ISS contended that it was not vicariously liable for Henderson's intentional tort which was not performed within the ambit of his assigned duties or in furtherance of ISS's objectives. Similarly, GE declared an entitlement to tort immunity in that the company claimed to be the statutory employer of the members of the ISS crew. The trial court agreed and granted both summary judgments, dismissing Watkins's claims against GE and ISS. This appeal ensued.

DISCUSSION
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.[2] Moreover, through a 1997 amendment to Article 966, the jurisprudential presumption against granting summary judgment has been eliminated. See Acts 1997, No. 483. Instead, the enacted changes have leveled the playing field for the litigants. Documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. Koeppen v. Raz, 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337; Gardner v. LSU-MC, 29,946 (La. App.2d Cir.10/29/97), 702 So.2d 53. Indeed, summary judgment is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966 A(2).
An appellate court reviews summary judgment de novo, under the same criteria that govern a trial court's considerations regarding the appropriateness of summary judgment. Koeppen, supra; Gardner, supra.

Liability of ISS
Ordinarily, an employee's exclusive remedy for an on-the-job injury is workers' compensation. La. R.S. 23:1031, 1032. However, La. R.S. 23:1032(B) provides an exception to this rule for intentional torts. According to this exception, neither an employer nor a co-employee who willfully causes an employee's injury can avail himself of the shield of tort immunity generally provided by La. R.S. 23:1032. Moreover, an employer can be *174 held vicariously liable for the intentional acts of its employee. Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (La.1992), and authorities therein.
Nevertheless, such liability extends only to those acts which are within the course and scope of the injuring employee's employment. La. C.C. art. 2320; Baumeister v. Plunkett, 95-2270 (La.05/21/96), 673 So.2d 994; Barto, supra. The course of employment test refers to time and place. Baumeister, supra. The scope of employment test examines the employment-related risk of injury. Id.
Indeed, in order for vicarious liability to attach, the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest. Baumeister, supra; LeBrane v. Lewis, 292 So.2d 216 (La.1974); Barto, supra.
Our supreme court has suggested the following factors be considered in holding an employer vicariously liable for an employee's deliberate actions: whether the tortious act was primarily employment rooted; whether the violence was reasonably incidental to the performance of the employee's duties; whether the act occurred on the employer's premises; and, whether it occurred during the hours of employment. LeBrane, supra. It is not necessary that all four factors be met in order to find liability. Baumeister, supra; Barto, supra.
Thus, an employer is not vicariously liable for the intentional acts committed by its employee merely because his employee commits an intentional tort on the business premises during working hours; instead, vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives. Baumeister, supra; Barto, supra. The particular facts of each case must be examined to determine whether an employee's act is within the course and scope of his employment. Id.
There is no dispute that the battery, in the instant case, occurred in the course of employment. Henderson had not yet clocked out from his shift and was still at the GE plant which the ISS crew had been cleaning. Regarding the other two LeBrane factors (i.e. the scope of employment), ISS contends, in its motion for summary judgment and now on appeal, that Henderson went outside the ambit of his employment duties in stealing the radios and in pummeling Watkins. Like the trial court, we agree.
We find the rationale of Barto, supra, particularly convincing. Barto, in his role as supervisor of a fast food establishment, questioned a co-employee (Fletcher) about the theft of money from the office cash box. When Fletcher began to empty his pockets as requested, he pulled out a knife and began stabbing and beating Barto. In that case, this court found that Fletcher's attack was not related to any of his employment duties, did not further the employer's objectives, and was, instead, clearly prompted by his own personal motives in his attempt to steal money from the business.
Likewise, Henderson's job entailed cleaning bathrooms and offices. His duties did not include stealing radios and kicking his supervisor in the head and chest. While Watkins was plainly functioning within his duties in suspending Henderson pending an investigation of the alleged theft, Henderson's response had no root in an employment endeavor. In committing the battery, Henderson clearly acted on personal motivations. Not only was Henderson's theft of the radios[3] a purely *175 personal matter, but, in his deposition, he also indicated that his violent reaction was partly provoked by his long-term problem with the way Watkins treated him.
Nor can we say the battery furthered any ISS objectives. Rather, it deprived the company of two of its employees. We find that it was not a risk of harm fairly attributable to ISS's business as a janitorial service. Henderson struck Watkins for purely personal considerations entirely extraneous to his employer's interest. Therefore, the trial court correctly determined that ISS is not vicariously liable for Henderson's intentional tort.[4]

Liability of GE
In its motion for summary judgment, GE contends that it is the statutory employer of Henderson.[5] Thus, like ISS, it should be granted tort immunity under these circumstances.
A principal's status as the statutory employer of its contractor's employees is governed by La. R.S. 23:1061.[6] In Kirkland v. Riverwood Intern. USA, Inc., 95-1830 (La.09/13/96), 681 So.2d 329, our supreme court explained the then-current criteria to be used in determining the existence of such a relationship:
[T]he appropriate standard under ... Section 1061 for determining whether the contract work is part of the alleged principal's trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another. Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Thus the determination of whether the contract work was part of the principal's trade, business or occupation is a factual issue to be resolved on a case-by-case *176 basis. Lewis v. Exxon Corp., 441 So.2d 192 (La.1983). Once the Legislature declared in 1989 that no single factor is determinative, the fact-based nature of the inquiry virtually necessitates a multi-factored, case-by-case factual inquiry under the totality of the circumstances. A totality of the circumstances inquiry is frequently difficult to accomplish on motion for summary judgment which requires a showing that there is no genuine issue of material fact that would defeat entitlement to judgment as a matter of law. [Footnotes omitted.]
Kirkland, 681 So.2d at 336, 337.
Although GE may well prevail on the merits of this case, the evidence presented in support of its motion for summary judgment falls short of satisfying the "totality of the circumstances" inquiry required by Kirkland, supra. Although the affidavit of ISS's branch manager mentions some facets of the contract between ISS and GE, the "Terms of Agreement" attached thereto bears no dates and no signature by a GE representative. The affidavit from the manager of GE's Rome, Georgia transformer plant does establish that GE employees perform janitorial services at that facility. However, under a "totality of the circumstances" examination, we cannot say that it proves that GE customarily used its own employees to perform janitorial work or that the company possessed the equipment and personnel needed to complete such tasks. While the absence of any particular factor is certainly not fatal to the finding that GE was the statutory employer of the ISS crew, such deficiencies make such a determination unsuitable within the ambit of summary judgment.

CONCLUSION
Accordingly, for the foregoing reasons, we affirm the summary judgment dismissing Watkins's claims against ISS, but reverse the judgment releasing GE. We remand to the trial court for further proceedings. Costs are assessed equally between GE and Watkins.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
WILLIAMS, J., concurs.
NOTES
[1] These facts, in large part, are according to Watkins's deposition. Henderson, of course, provides a slightly different rendition of the event. But, for the purposes of these summary judgment motions, the defendants have accepted Watkins's facts as true. Aside from Henderson's admission that his acts were intentional, the particulars of the battery are not material issues of fact regarding these motions.
[2] Inasmuch as a defendant's tort liability as employer or statutory employer is an affirmative defense, ISS and GE bore the burden of proof on these issues. Thus, the burden shifting of La. C.C.P. art. 966 C(2) does not apply; rather, the burden of proof remains with the movants.
[3] Henderson, of course, still denies stealing the radios. However, as mentioned previously, the defendants have accepted Watkins's rendition of the facts as accurate for the purposes of these summary judgment motions.
[4] In accord with ISS's motion for summary judgment, the trial court also dismissed the other claims raised in Watkins's petition: liability for the individual negligence of ISS and a loss of consortium claim on behalf of his minor son. Watkins has not appealed those issues. While pretermitting a discussion of the merits, we do note that the trial court correctly dismissed these claims. Watkins's sole remedy against ISS is in workers' compensation.
[5] GE did not raise this affirmative defense in its answer. Rather, the company asserted it for the first time on summary judgment. Nevertheless, inasmuch as Watkins did not object and the issue was tried by the consent of the parties, the pleadings have been expanded. See La. C.C.P. art. 1154.
[6] Acts 1997, No. 315 amended La. R.S. 23:1061 so as to overrule the statutory employer tests set forth in Berry v. Holston Well Service, 488 So.2d 934 (La.1986), and Kirkland, infra. This amendment does not apply to Watkins's cause of action which arose on January 26, 1996prior to the effective date of the amendment.