803 So.2d 297 (2001)
Earl WEARRIEN, Plaintiff-Appellant,
v.
Victor VIVERETTE, et al., Defendant-Appellee.
No. 35,446-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
*298 Donald R. Miller, Shreveport, Counsel for Appellant.
Wilkinson, Carmody & Gilliam, by Arthur R. Carmody, Jr., Shreveport, Lathrop & Gage, by John M. McFarland, Counsel for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The plaintiff, Earl Wearrien, filed suit against a co-worker, Victor Viverette, for personal injuries resulting from an altercation at work at the General Motors Corporation (GM) plant in Shreveport. The plaintiff also claimed that GM was vicariously liable for the tort committed upon him by Viverette. Both the plaintiff and GM filed motions for summary judgment. The trial court judgment rejected the plaintiff's motion and granted summary judgment in favor of GM. The plaintiff appealed. We affirm.

FACTS
On August 6, 1999, the plaintiff and Victor Viverette were working the evening shift at GM. They had a meal break from 8:30 p.m. to 9:00 p.m. The plaintiff left the plant and got a snack at a nearby convenience store. On his way back into the plant, he encountered Viverette and another individual in the parking lot. According to the plaintiff, the two had been smoking marijuana in Viverette's car. As the men walked into the plant, Viverette began insulting the plaintiff's wife, who was also a GM employee. Viverette said that she was having an affair with a supervisor in the plant, during work hours. The plaintiff instructed Viverette to stop talking about his wife. The comments continued as they entered the plant. The plaintiff went to a telephone near Viverette's work station and briefly called his wife, who was working at another location in the plant. As he walked away, the plaintiff again told Viverette not to talk about his wife. According to the plaintiff, Viverette followed him to his work station, struck him twice from behind in the head with a hammer and then pushed him into a welding machine. The plaintiff claimed that he sustained cuts to his head, neck, and arm as well as muscle and ligament injuries to his neck, upper back and chest.
On August 7, 2000, the plaintiff filed suit against Viverette and also named GM as a defendant. According to the plaintiff, GM is vicariously liable for Viverette's intentional tort. The plaintiff argued that the conduct was so closely related in time, place, and causation to employment duties that it created a risk of harm attributable to GM's business.
*299 On February 2, 2001, GM filed a motion for summary judgment, arguing that the battery occurred while the men were on a break. Because Viverette was not acting in the course and scope of his employment, GM argued that it was not vicariously liable for the intentional tort. Attached to GM's motion was the plaintiffs deposition.
On February 22, 2001, the plaintiff filed his opposition to the motion for summary judgment and also filed his own motion for summary judgment, claiming that GM was vicariously liable under the factors set forth in LeBrane v. Lewis, 292 So.2d 216 (La.1974). Attached to the plaintiffs motion was his affidavit outlining the events connected with the battery. The plaintiff also stated that he was concerned that Viverette's comments would affect his job and that of his wife. He also attested that he was required by his employment to be at the place where the battery occurred.
A hearing on the motions was held on March 12, 2001. GM argued that Viverette was not acting within the ambit of his assigned duties and was not acting in furtherance of his employer's objectives when he attacked the plaintiff. GM's attorney argued that it was not within the scope of employment for Viverette to come to the plant under the influence of marijuana and pick fights. The plaintiff's attorney argued that, because Viverette was saying that the plaintiff's wife was having an affair with a supervisor, the plaintiff was afraid that both he and his wife were in danger of losing their jobs. GM contended that it is not important what the victim thought at the time of the attack.
The trial court granted the motion for summary judgment in favor of GM and denied the motion filed by the plaintiff. The court concluded that there was no evidence to show that the plaintiff could meet his burden of showing that the battery occurred within the scope of employment. A judgment to that effect was signed by the trial court on April 24, 2001. The trial court designated the judgment as an appealable final judgment and the plaintiff filed an appeal, objecting to the denial of its motion for summary judgment and the granting of GM's motion.

SUMMARY JUDGMENT
The legal principles regarding summary judgment are well settled. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Eichelberger v. Sidney, 34,040 (La.App.2d Cir.11/3/00), 771 So.2d 863.
The burden is on the party seeking summary judgment to establish that there is an absence of factual support for one or more of the essential elements of the adverse party's claims. When a motion for summary judgment has been filed and supported by the evidence, the adverse party may no longer rely on the mere allegations or denials of his pleadings, but through affidavits or otherwise, must set forth evidence demonstrating that there is a genuine issue for trial. La. C.C.P. art. 967; Eichelberger v. Sidney, supra. If the non-moving party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966.
We review summary judgments de novo under the same criteria that govern the district court's consideration of the appropriateness of summary judgment. Summary judgment procedure is now favored to secure the just, speedy and inexpensive determination of all except certain disallowed *300 actions. Eichelberger v. Sidney, supra.

VICARIOUS LIABILITY
Generally, an employee's exclusive remedy against his employer for on-the-job injury is workers' compensation. Henry v. Taco Tio, Inc., 606 So.2d 1376 (La. App. 2d Cir.1992). An exception is made for intentional torts. La. R.S. 23:1032 provides in pertinent part:
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
. . . .
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
An employer may be vicariously liable for the intentional acts of its employees. La. C.C. art. 2320. However, the employer's vicarious liability for the intentional torts of its employees extends only to those acts which are within the course and scope of the tortfeasor employee's employment. Henry v. Taco Tio, Inc., supra. The course of employment test refers to time and place. The scope of employment test examines the employment related risk of injury. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994.
An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and in furtherance of his employer's objectives. Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991); Watkins v. International Service Systems, 32,022 (La.App.2d Cir.6/16/99), 741 So.2d 171.
The employee's tortious conduct must be so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. Baumeister v. Plunkett, supra; Rambo v. Webster Parish School Board, 32,447 (La. App.2d Cir.10/27/99), 745 So.2d 770; Watkins v. International Service Systems, supra.
The test for employer liability was established by the supreme court in LeBrane v. Lewis, supra. In that case, an employer was found to be vicariously liable when a restaurant supervisor stabbed an employee during the course of firing him and forcing him to leave the premises. The court found that the supervisor's conduct was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business as compared with conduct motivated by purely *301 personal considerations entirely extraneous to the employer's interests. The supervisor's actions were regarded to be within the scope of his employment so that the employer was vicariously liable to a third person injured thereby. The court considered the following factors in holding the employer liable for the supervisor's actions in stabbing his co-employee:
(1) whether the tortious act was primarily employment rooted;
(2) whether the act was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
In LeBrane, the court found that all four factors were satisfied. However, subsequent cases have held that it is not necessary that all four factors be met in order to find liability. Baumeister v. Plunkett, supra; Eichelberger v. Sidney, supra.
The jurisprudence also emphasizes the character of the connection of the employee's act to the employment purpose. Dickerson v. Piccadilly Restaurants, Inc., 99-2633 (La.App. 1st Cir.12/22/00). 785 So.2d 842. It is not determinative that the predominant motive of the tortfeasor servant is to benefit himself or a third person, for such a motive does not prevent the act from being within the scope of employment. Rather, the court will look to see if the purpose of serving the master's business actuated the servant to any appreciable extent. If so, the master is subject to liability if the act is otherwise within the service. Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990); Dickerson v. Piccadilly Restaurants, Inc., supra.
This principle is illustrated in those cases finding employers liable for the intentional torts of their employees. In Benoit v. Capitol Manufacturing Company, 617 So.2d 477 (La.1993), two workers became embroiled in a dispute over whether the rear door to the work place should be open or closed. During a work break, a scuffle ensued and one employee struck the other with a broomstick, breaking a bone in his hand. The court found that the altercation was employment related, because the issue was the temperature in the workplace. The court found that the employees were in the course and scope of employment.
In Quebedeaux v. Dow Chemical Company, XXXX-XXXX (La.App. 1st Cir.5/11/01), ___ So.3d ___, 2001 WL 498959, two employees got into an altercation concerning work duties. In that case, the employer was found to be vicariously liable. It was undisputed that the battery was committed within the course and scope of the tortfeasor employee's employment. The dispute also arose over employment issues. The employer conceded that it was vicariously liable for a portion of the damages sustained by the injured employee.
In Brumfield v. Coastal Cargo Company, Inc., 99-2756 (La.App. 4th Cir.6/28/00), 768 So.2d 634, a truck driver inquired of a forklift operator when his truck was to be loaded. In so doing, the driver addressed the lift operator in a vile and derogatory way. The lift operator attacked the driver. Because the policy manual prohibited fighting or assaulting any person while at work where such conduct would embarrass the company, the court concluded that the possibility of fighting was a risk of harm fairly attributable to the employer's business. Therefore, the employer was vicariously liable for its employee's intentional tort in attacking the truck driver.
In those cases where the tortfeasor employee was not serving the interests of the employer to any appreciable extent, *302 the employer has not been found vicariously liable for an employee's intentional tort. In Baumeister v. Plunkett, supra, the supreme court found that a hospital was not vicariously liable for a sexual assault by one employee upon another employee during a work break. The court stated that there is no magic formula to establish vicarious liability for intentional torts committed by employees. However, an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. There must additionally be some evidence that the intentional act was reasonably incidental to the performance of the employee's duties or that the tortious act was primarily employment rooted. In Baumeister, there was no such showing.
In Eichelberger v. Sidney, supra, this court considered the question of whether an employer was vicariously liable for an intentional battery committed by one employee upon another in a hair salon. The employees became involved in the altercation over a videotape played to entertain the children of a customer. This court found that the attack was entirely extraneous to the employer's interests and the likelihood of the attack was not a risk fairly attributed to the performance of the employee's duties.
In Watkins v. International Service Systems, supra, an employee was supervising a janitorial crew at a manufacturing plant. He questioned another employee about property missing from the area cleaned by that employee. The supervisor found the missing items in a storage closet used by the employee. When told that he would be suspended pending investigation of the theft, the employee attacked the supervisor. In finding that the employer was not responsible for the attack, this court stated that the tortfeasor employee's duties did not include theft and attacks on his supervisor, nor did the attack further any of the employer's objectives.
In Barto v. Franchise Enterprises, Inc., supra, this court similarly found that an employer was not vicariously liable for an attack by an employee on his supervisor when the supervisor discovered that the employee had taken money from the restaurant where they worked. The employee was not acting within the ambit of his assigned duties or in furtherance of his employer's objectives.
In Pye v. Insulation Technologies, Inc., 97-237 (La.App. 5th Cir.9/17/97), 700 So.2d 892, after a supervisor reprimanded an employee, the employee attacked the supervisor. The employer was found not to be vicariously liable because the employer derived no benefit from the act of hitting the supervisor and the act was extraneous to the employer's interests.
In Ryback v. Belle, 98-2766 (La.App. 1st Cir.2/18/00), 753 So.2d 383, an employee accidently closed a freezer door while another employee was inside. The other employee easily got out of the freezer and then attacked the co-employee. The first circuit affirmed a jury determination that the attack was not incidental to the employee's duties and was not primarily employment rooted. Therefore, the employer was not vicariously liable.
In Dickerson v. Piccadilly Restaurants, Inc., supra, a fry cook stabbed another employee when he was informed that the co-employee had tried to break into his personal toolbox during his absence. The tools were not needed for cooking. The court found that the attack was not employment rooted. There was no employment related catalyst, i.e., the intentional tort was not linked to an employment required duty.
*303 In Allen v. Payne & Keller Company, Inc., 96-2326 (La.App. 1st Cir.4/8/98), 710 So.2d 1138, an employee had a deep brain simulator implanted in his head to control back pain. As the employee was bending over, another employee bumped him, causing him to fall forward, hitting his head. The court found that the employer was not vicariously liable because the intentional tort occurred during horseplay and was not incidental to the tortfeasor's duties.

DISCUSSION
In the present case, it is not disputed that two of the factors under LeBrane are satisfied. Because the assault occurred on the employer's premises during the hours of employment, the attack occurred during the course of employment. However, based upon the record before us, the plaintiff has failed to show any genuine issue of material fact as to whether the tortious act was primarily employment rooted or was reasonably incidental to the performance of the employee's duties. Further, there is no showing that the behavior involved a risk of harm fairly attributable to GM's business. Accordingly, there is no showing that the attack was in the scope of employment.
The comments made to the plaintiff by Viverette were in the nature of a personal insult regarding the plaintiff's wife. The plaintiff has failed to show that Viverette had any employment duties that would cause him to question the alleged behavior of the plaintiffs wife on behalf of the company or act to remedy that behavior for the good of the company. Certainly Viverette's action in attacking the plaintiff over alleged promiscuity of the plaintiff's wife was not incidental to the performance of Viverette's duties. Also, the plaintiff has not shown that Viverette's intentional tort was done in furtherance of any of GM's objectives.
We also reject the plaintiff's argument that his concern over Viverette's allegations and their possible impact on his career and that of his wife made this incident employment related. The emphasis in determining whether an intentional tort is employment related is on the motives and actions of the tortfeasor employee. What the plaintiff thought is of no moment. This is illustrated particularly by the cases of Pye v. Insulation Technologies, Inc., supra; Watkins v. International Service Systems, supra; and Barto v. Franchise Enterprises, Inc., supra, where supervisors confronted employees regarding work-related issues and were attacked by the employees. In deciding whether the employer was vicariously liable for the intentional torts, the emphasis was not on whether the supervisors were carrying out their employment duties or acting in furtherance of the employers' interests. The emphasis was on whether the tortfeasor employee's actions were linked to a duty required by their employment. In the present case, Viverette's conduct was motivated by purely personal considerations entirely extraneous to GM's interests.
We find that the trial court decision granting summary judgment to GM and denying the plaintiffs motion for summary judgment is correct. The plaintiff has failed to provide factual support sufficient to establish that he will be able to satisfy his burden of proof at trial. Accordingly, there is no genuine issue of material fact as to whether GM is vicariously liable for Viverette's actions.

CONCLUSION
For the reasons stated above, we affirm the trial court decision granting summary judgment in favor of General Motors Corporation and denying the motion for summary judgment filed by the plaintiff. *304 All costs in this court are assessed to the plaintiff, Earl Wearrien.
AFFIRMED.