734 So.2d 1280 (1999)
Ruby Nell HUBBARD, Plaintiff-Appellee,
v.
LAKELAND NURSING HOME, et al., Defendant-Appellant.
No. 98-1893.
Court of Appeal of Louisiana, Third Circuit.
May 19, 1999.
*1281 Joseph Texada Dalrymple, Alexandria, for Ruby Nell Hubbard.
Brandon Sues, Alexandria, for Lakeland Nursing Home, et al.
BEFORE: DOUCET, C.J., COOKS, and PICKETT, Judges.
COOKS, Judge.
Lakeland Nursing Home (Lakeland) appeals the trial court's grant of summary judgment imposing vicarious liability on it for the battery committed by one of its employees upon a supervisor. For the following reasons, we reverse the trial court's judgment.

BACKGROUND FACTS AND PROCEDURAL HISTORY
On August 11, 1996, two non-employee male friends were visiting Tanya Carpenter, a nursing assistant, at Lakeland during working hours. Carpenter's supervisor (Ruby Nell Hubbard) advised her personal visits were against policy, at which time the two men left. A few minutes later, Carpenter belligerently confronted Hubbard and accused her of being racist. Following this exchange, Hubbard called and reported Carpenter's insolence to Herman Marshall, Lakeland's administrator. Because Hubbard wanted to avoid any further confrontation, Marshall agreed to tell Carpenter to "clock out." While on the telephone with Marshall, Carpenter was hostile. Her last statement to Marshall was, "if I have to check out and go home, I'm going to give her something to remember sending me home for." Carpenter hung up the phone and proceeded to physically assault Hubbard. As a result of the incident, Hubbard's nose was broken and her face seriously bruised.
Hubbard filed suit against Lakeland and Carpenter seeking damages for injuries sustained during the attack. In her petition, Hubbard claimed Lakeland was vicariously liable for the intentional tort committed by Carpenter. She also alleged Lakeland was negligent in employing a known volatile and potentially violent nurse's aid.[1] Thereafter, Hubbard and Lakeland filed separate motions for summary judgment on the issue of vicarious liability. The trial court granted Hubbard's motion for summary judgment and dismissed Lakeland's. This appeal follows.

ASSIGNMENT OF ERROR
Lakeland claims the trial court erred in granting Hubbard's motion for summary judgment and dismissing its motion for summary judgment as a matter of law.

LAW AND ANALYSIS
As a general principle, "[a]ppellate courts review summary judgments de novo, under the same criteria which governs the district court's consideration of the appropriateness of summary judgment." Potter v. First Federal Savings & Loan Ass'n of Scotlandville, 615 So.2d 318, 325 (La.1993), citing Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, we shall conduct a de novo review of the trial record in this suit to determine if summary judgment was properly granted.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La.Code Civ.P. art. 969. The procedure is favored and shall be construed to accomplish those ends. La.Code Civ.P. art. 966(A)(2). The threshold question in reviewing a motion for summary judgment is whether a genuine issue of material fact exists. La. Code Civ.P. art. 966(c). If not, we must *1282 then determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment as a matter of law. Id.
In the instant case both parties agree no genuine issues of material fact exists. They only argue the legal conclusion to be drawn from the facts. La.Civ. Code art. 2320 provides: "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions for which they are employed." An employer is vicariously liable for the tortious acts of its employee only when the "tortious conduct of the employee is so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). Furthermore, "[a]n employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." Baumeister v. Plunkett, 95-2270, p. 3 (La.5/21/96); 673 So.2d 994, 996, citing Scott v. Commercial Union Ins. Co., 415 So.2d 327, 329 (La. App. 2 Cir.1982); Bradley v. Humble Oil & Refining Co., 163 So.2d 180 (La.App. 4 Cir.1964). "Vicarious liability will attach to such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." Id.
The LeBrane Court outlined four factors which it found should be considered in determining whether the employee's conduct was within the ambit of his assigned duties or the course and scope of his employment:
(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.
LeBrane, 292 So.2d at 218. Such a determination depends on the facts and circumstances of each case. Baumeister, 673 So.2d 994.
Clearly, the last two LeBrane factors are established. Carpenter assaulted Hubbard on the nursing home's premises during working hours. However, neither the first nor second LeBrane factors are present in this case. Carpenter was hired to feed and care for nursing home residents. Her duties did not include assaulting a supervisor whom she believed discriminated against minorities. Carpenter, if aggrieved by Hubbard's alleged racism, was not without legal recourse. She could have sought redress from Hubbard's supervisors, filed a complaint with the Federal Equal Opportunity Commission or lodged a civil rights suit. But "striking" Hubbard was not an option legally available to redress the harm she suffered, if any. Carpenter's assault of Hubbard simply was not reasonably incidental to the performance of her duties as a nurse's aid.
Similarly, we find Carpenter's tortious act was not primarily employment rooted. To find Carpenter's conduct employment rooted, we must conclude Lakeland was the intended beneficiary of the act. Baumeister, 673 So.2d 994; Ermert v. Hartford Insurance Co., 559 So.2d 467 (La. 1990). According to Carpenter, Hubbard's alleged racial bias was "illegal, tortious, immoral and disruptive to the work environment." Thus, she contends, because the assault was designed to "preserve the integrity of equal rights and non-discriminatory practices in the workplace," her conduct was in Lakeland's interest. We find this argument unavailing. The assault was adverse to Lakeland's interestsan employer has a paramount duty to safeguard the physical well-being of its employees. There is little doubt as to Carpenter's intent, she said "if I have to *1283 check out and go home, I'm going to give her something to remember sending me home for" just minutes before the brutal attack. Carpenter's assault was clearly motivated, by a desire to further her personal interests. Her primary intent was to injure Hubbard "for sending her home," not to defend her civil rights or the rights of her co-workers. Even if she was so motivated we simply cannot as a matter of public policy indirectly sanction such outbursts at the workplace.
Accordingly, we conclude Lakeland is not vicariously liable for Carpenter's tortious act. The trial court erred in granting summary judgment in favor of Hubbard and dismissing Lakeland's motion for summary judgment.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. We render judgment in favor of defendant, granting its motion for summary judgment and against plaintiff, denying its motion for summary judgment. All costs are assessed against plaintiff-appellee.
REVERSED AND RENDERED.
NOTES
[1] This claim was later withdrawn.