810 So.2d 1245 (2002)
Kathy D. GUY and William Ray Guy, Plaintiff-Appellant,
v.
Roderick K. MITCHELL and Fibrebond Corporation, Defendant-Appellee.
No. 35,713-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2002.
James H. Johnson, Eric G. Johnson, Minden, for Appellant.
Roderick K. Mitchell, Pro. Per.
Michael G. Latimer, for Appellee, Fibrebond Corporation.
Before WILLIAMS, STEWART and GASKINS, JJ.
WILLIAMS, J.
The plaintiffs, Kathy Guy ("Guy") and her husband, William Guy, appeal a trial court's judgment in favor of her employer, Fibrebond Corporation ("Fibrebond"). The trial court granted the employer's motion for summary judgment, dismissing plaintiffs' personal injury claims. The *1246 court found that plaintiff Guy's exclusive remedy was in worker's compensation. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
In October 1994, Kathy Guy was employed at Fibrebond as an exterior finisher. On the morning of October 26, 1994, Guy was looking for her supervisor, Mona Blackwell. Guy asked her co-employee, Roderick Mitchell ("Mitchell"), if he knew Blackwell's whereabouts. Mitchell responded "I don't know and I don't give a damn." When Guy located Blackwell, she told Blackwell of her exchange with Mitchell, and Blackwell stated that she would speak to Mitchell about his comment. Guy returned to her work area. A short time later, Mitchell angrily approached Guy and confronted her with regard to her report to the supervisor. Although Guy attempted to withdraw from the confrontation, Mitchell continued to verbally abuse her and ultimately struck her in the head and neck region, injuring her and knocking her to the floor.
Initially, Guy asserted a workers' compensation claim for indemnity benefits and medical payments arising out of the incident with Mitchell, and Fibrebond paid her over $9,400 under her workers' compensation claims. However, in October 1995, Guy and her husband filed a personal injury lawsuit against Mitchell and Fibrebond. In their petition, plaintiffs averred that Guy's injuries were caused by Mitchell's intentional act of striking Guy. They also averred that at the time of the incident, both Guy and Mitchell were at their place of employment and were engaged in activities in the course and scope of their employment. They asserted that Fibrebond was vicariously liable for Mitchell's intentional tort against Guy.
Fibrebond filed a motion for summary judgment, asserting that Guy's sole remedy was a claim for workers' compensation benefits. With respect to the plaintiffs' allegation that Fibrebond was vicariously liable for Mitchell's act, Fibrebond essentially asserted that Mitchell's alleged tortious conduct resulted from purely personal considerations, was not within the ambit of his assigned duties, did not further Fibrebond's objectives and was not sufficiently connected to his employment duties so as to be regarded as a risk of harm fairly attributable to Fibrebond.
In opposition to the motion for summary judgment, the plaintiffs argued that Mitchell's violence was primarily an employment-related act. While plaintiffs admitted that Mitchell's actions did not benefit Fibrebond, they asserted that Mitchell reacted because Guy reported him to the supervisor, initiating the "derogatory exchange" between Guy and Mitchell. Plaintiffs argued that an employment-related nexus for the assault and battery was established by Mitchell's reprimand by his supervisor, and the reprimand was an act within the supervisor's job duties. The plaintiffs further argued that because fighting and workplace violence were specifically prohibited at Fibrebond, the possibility of physical altercations was a risk of harm "fairly attributable to Fibrebond's business." The trial court rejected the plaintiffs' arguments and granted summary judgment in favor of Fibrebond. The plaintiffs appeal.

DISCUSSION
The plaintiffs contend the trial court erred in granting summary judgment. They argue the trial court erred when it concluded that there was no evidence to support the plaintiffs' allegation that the intentional tort committed by Mitchell was within the course and scope of his employment.
*1247 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). An appellate court reviews summary judgments de novo under the same criteria that govern a trial court's considerations of the appropriateness of summary judgment. Watkins v. International Service Systems, 32,022 (La.App.2d Cir.6/16/99), 741 So.2d 171, writ denied, 99-C-2129 (La.10/29/99), 749 So.2d 640.
In Watkins, this court discussed the exception to an employee's exclusive remedy in workers' compensation for the intentional torts of an employer or co-employee. We also discussed an employer's vicarious liability for the intentional acts of its employee:
Ordinarily, an employee's exclusive remedy for an on-the-job injury is workers' compensation. La. R.S. 23:1031, 1032. However, La. R.S. 23:1032(B) provides an exception to this rule for intentional torts. According to this exception, neither an employer nor a co-employee who willfully causes an employee's injury can avail himself of the shield of tort immunity generally provided by La. R.S. 23:1032. Moreover, an employer can be held vicariously liable for the intentional acts of its employee. Barto v. Franchise Enterprises, Inc., 588 So.2d 1353 (La.App. 2d Cir.1991), writ denied, 591 So.2d 708 (La.1992); Baumeister, supra; LeBrane v. Lewis, 292 So.2d 216 (La. 1974); Barto, supra, and authorities therein.
Nevertheless, such liability extends only to those acts which are within the course and scope of the injuring employee's employment. LSA-C.C. art. 2320; Baumeister v. Plunkett, 95-2270 (La.05/21/96), 673 So.2d 994; Barto, supra. The course of employment test refers to time and place. Baumeister, supra. The scope of employment test examines the employment related risk of injury. Id.

Indeed, in order for vicarious liability to attach, the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.
Our supreme court has suggested the following factors be considered in holding an employer vicariously liable for an employee's deliberate actions: whether the tortious act was primarily employment rooted; whether the violence was reasonably incidental to the performance of the employee's duties; whether the act occurred on the employer's premises; and, whether it occurred during the hours of employment. (Emphasis added.) LeBrane, supra. It is not necessary that all four factors be met in order to find liability. Baumeister, supra; Barto, supra.

Thus, an employer is not vicariously liable for the intentional acts committed by its employee merely because his employee commits an intentional tort on the business premises during working hours; instead, vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives. Baumeister, supra; Barto, supra. The particular facts of each case must be examined to determine whether an employee's act is within the course and scope of his employment. Id.

*1248 Without dispute, Mitchell's attack on Guy occurred on Fibrebond's premises during working hours. Thus, the third and fourth factors from LeBrane, supra, are satisfied. The remaining issues are whether Mitchell's actions were primarily employment-rooted and whether his actions were reasonably incidental to the performance of his duties.
It is evident that Mitchell's violence was not reasonably incidental to the performance of his job duties. The performance of his duties did not involve violently striking his co-employee in the head and neck area. Instead, the attack was the result of Mitchell's anger and was unprovoked by Guy. In Watkins, supra, a janitorial employee kicked his supervisor after the supervisor had approached him about the theft of radios from a locker at the workplace. In finding no vicarious liability on the part of the employer for the employee's intentional tort, this court noted that the employee's job entailed cleaning bathrooms and offices, and did not include stealing radios and kicking his supervisor in the head and chest. Instead, the employee clearly was acting on personal motivations.
Similarly, in Eichelberger v. Sidney, 34,040 (La.App.2d Cir.11/3/00), 771 So.2d 863, writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 827, this court found no vicarious liability on the part of the employer where a receptionist at a hair salon physically attacked a hairdresser after the receptionist refused the hairdresser's request to play a videotape to entertain a client's children, and the hairdresser then attempted to play the videotape herself. We noted that the receptionist's refusal was not within the ambit of her assigned duties, but was actually contrary to them. We also concluded that it was unreasonable to conclude that the receptionist's attack of her co-employee for performing a task that the receptionist refused to perform was a foreseeable extension of the performance of the receptionist's job duties. In the present case, Mitchell's tortious conduct was neither within the ambit of his duties, nor a foreseeable extension of the performance of his duties.
The remaining LeBrane factor is whether the tortious act was "primarily employment-rooted." With regard to this factor, in Miller v. Keating, 349 So.2d 265 (La. 1977), the Louisiana Supreme Court described the tort in LeBrane as "one which evolved out of a dispute relating to the employment." This factor was satisfied in LeBrane because the dispute which led to the violence evolved out of circumstances in which the employee who committed the violent act had been acting for his employer in the discharge of a recalcitrant co-employee. However, this factor is not satisfied in the instant case because the confrontation between Guy and Mitchell did not evolve out of a dispute related to their employment at Fibrebond, but evolved from Mitchell's purely personal considerations in taking out his anger on his co-employee for being reprimanded by the supervisor. Workplace violence is not "primarily employment-rooted" for purposes of an employer's vicarious liability merely because the violence occurred at work as the result of an incident that took place at work. Instead, to be "primarily employment-rooted" we look to the degree to which the tortious act was prompted by an employee's purely personal considerations as opposed to an employee's duties and the employer's interests. Mitchell's tortious actions plainly were prompted entirely by personal considerations; his acts were neither connected to his employment duties, nor in his employer's interests.
The instant case is distinguishable from Benoit v. Capitol Manufacturing Company, 617 So.2d 477 (La.1993). There, co-employees fought over whether *1249 a door to the employment facility should be left open because of the temperature. Our supreme court found that the intentional act was clearly employment-rooted where the temperature of the workplace was an employment issue. However, in the instant case, Mitchell's intentional tort did not evolve from a dispute over an employment issue, but resulted from his personal anger at his co-employee unrelated to any employment duty or employer interest.
We find the instant case analogous to Hubbard v. Lakeland Nursing Home, 98-1893 (La.App. 3d Cir.5/19/99), 734 So.2d 1280, writ denied, 99-1705 (La.10/1/99), 748 So.2d 442. There, a supervisor informed a nursing assistant that personal visits were against nursing home policy. The nursing assistant later belligerently confronted the supervisor and accused her of being a racist. The supervisor then called the nursing home's administrator and reported the incident. In turn, the administrator called the assistant and told her to "clock out." After the assistant finished talking with the administrator, she physically assaulted the supervisor, breaking her nose and seriously bruising her face. In finding that the tortious acts were not primarily employment-rooted, the court stated that to find the conduct employment-rooted, the court would have to conclude that the nursing home was the intended beneficiary of the tortious act. However, the court found that the assault was clearly motivated by the nursing assistant's desire to further her personal interest. Her primary intent was to injure her co-worker, even if part of her motivation was to defend her civil rights or the rights of her co-workers.
Finally, we note that the plaintiffs rely on the case of Brumfield v. Coastal Cargo Company, Inc., 99-2756 (La.App. 4th Cir.6/28/00), 768 So.2d 634, writ denied, 2000-2293 (La.10/27/00), 772 So.2d 658 to support their argument that Mitchell's conduct was employment related. In Brumfield, a truck driver filed an action against a cargo company and its employee for injuries sustained in a fistfight which occurred while the employee was on the job. The truck driver addressed the employee in a derogatory way and inquired when the employee was going to load his truck. This conversation led to an altercation resulting in the truck driver's injuries. The court was called upon to decide whether the tortious conduct of the employee, a lift operator, was primarily employment-rooted, and whether the incident was reasonably incidental to the performance of the employee's duties as a lift operator. A policy manual given to new employees at the company contained a provision specifically prohibiting fighting or assaulting any person "where such conduct might embarrass the company with customers or the public, or would create ill will among employees...." In holding the evidence sufficient to find the employer vicariously liable, the appellate court (with one judge dissenting) stated the inference to be drawn was "that the possibility of fighting was a risk of harm fairly attributable" to the employer's business.
Plaintiffs argue that because Fibrebond maintained a policy prohibiting workplace violence, the possibility of fighting was a risk of harm fairly attributable to Fibrebond's business. Thus, they argue that Fibrebond, like the employer in Brumfield, is vicariously liable for Mitchell's actions. We disagree. Fibrebond's employment policy included a long litany of various actions that Fibrebond prohibits at the workplace, including "loafing," smoking, and soliciting contributions on company time. By listing such a large number of prohibited actions, the policy cannot be said to be one from which a fair inference can be drawn that fighting or workplace violence was a risk of harm *1250 fairly attributable to Fibrebond's business. Instead, the fair inference is that Fibrebond, through its policy, simply was attempting to make employees aware of the employee behavior standards required by the employer.
Under the facts and circumstances of this case, we must conclude that the trial court correctly found that the plaintiffs could not present evidence at trial to show that the intentional tort was committed within the course and scope of Mitchell's employment. Consequently, the trial court's grant of summary judgment in favor of the employer was correct.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants, Kathy and William Guy.
AFFIRMED.