STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0721

STONETRUST COMMERCIAL INSURANCE COMPANY

VERSUS

WAYNE DENNIS STEVENSON, ET AL.

*Consolidated with*

Number 2021 CA 0722

TODD COLLINS AND CARLETRIA WHEELER, ON BEHALF OF THE
MINOR CHILD, CARLEIGH TODD COLLINS

VERSUS

ASSOCIATED INDUSTRIES INSURANCE INC., HARVEST HAUL, INC.,
HARVEST HAUL TRUCKING, LLC, WAYNE DENNIS STEVENSON, HUB
INTERNATIONAL MIDWEST, LTD D/B/A HUB INTERNATIONAL GULF
SOUTH, XYZ INSURANCE COMPANY, AND 123 INSURANCE COMPANY

**Judgment Rendered:   MAR 0 3 2022**

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C647910 c/w 647939

Honorable William A. Morvant, Presiding

* * * * * *

| | |
|---|---|
| Lewis O. Unglesby<br>Lance C. Unglesby<br>Jordan L. Bollinger<br>Adrian M. Simm, Jr.<br>Jamie F. Gontarek<br>Baton Rouge, LA | Counsel for Plaintiffs/Appellants<br>Todd Collins and Carletria Wheeler<br>on behalf of the minor child, Carleigh<br>Todd Collins |
| Phillip E. Foco<br>Colin P. O'Rourke<br>Anthony J. Lascaro<br>Baton Rouge, LA | Counsel for Plaintiff/Appellant<br>Stonetrust Commercial Insurance<br>Company |

André C. Gaudin
Scott O. Gaspard
Metairie, LA

Counsel for Defendants/Appellees
Harvest Haul, Inc. and Harvest Haul
Trucking, LLC

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

**GUIDRY, J.**

Plaintiffs, Todd Collins and Carletria Wheeler, on behalf of the minor child, Carleigh Todd Collins, and Stonetrust Commercial Insurance Company (Stonetrust) each appeal from the trial court's judgment granting summary judgment in favor of defendants, Harvest Haul, Inc., and Harvest Haul Trucking, L.L.C., and dismissing their claims against defendants with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 30, 2015, Todd Collins was operating a log truck for his employer, R & S Excavation and Dirt Service, delivering a load of logs to Georgia Pacific's paper mill in Port Hudson, Louisiana. While waiting in line with a number of other trucks to deliver his load of logs, Collins noticed that a truck ahead of him in line, which was operated by Wayne Stevenson, was not moving. After some time had passed, a gap formed between Stevenson's truck and the other trucks ahead of Stevenson in line. When Stevenson failed to move forward, Collins drove his truck around Stevenson's truck and proceeded forward in line. As Collins passed Stevenson's truck, he noticed Stevenson appeared to be asleep and Collins sounded his horn in an effort to wake Stevenson, but to no avail. Several other trucks followed Collins and passed Stevenson.

Thereafter, Stevenson awoke and, upon noticing that he had been passed up in the line, drove his truck to where Collins was stopped at the front of the line and parked next to Collins. Stevenson demanded over the CB radio for Collins to allow him to resume his place in line, but Collins refused. Stevenson proceeded to back his truck up in line, and parked approximately five truck-lengths behind Collins. Stevenson then exited his truck with a metal pipe, walked to the front of the line, and approached Collins's truck, whereupon Stevenson started to argue with Collins. At first, Collins refused to exit his truck, but after Stevenson opened the truck door and

3

spit on Collins, Collins exited the truck and Stevenson struck Collins with the metal pipe.

On April 28, 2016, Stonetrust, the workers compensation carrier for Collins's employer, filed a petition for damages in subrogation, naming Stevenson and his employer, Harvest Haul, Inc., and Harvest Haul Trucking, L.L.C. (sometimes collectively Harvest Haul) as defendants. Stonetrust asserted that Harvest Haul employed Stevenson and had assigned him to perform the work he was doing, that his work was the reason Stevenson was at the Georgia Pacific paper mill at the time of the incident, that the incident was rooted in Stevenson's employment for Harvest Haul, and that the incident arose out of Stevenson's desire to expeditiously and efficiently perform his work for Harvest Haul. As such, Stonetrust asserted that Harvest Haul was vicariously liable for the intentional actions of Stevenson. In addition, Stonetrust asserted that Harvest Haul was negligent in hiring and training Stevenson. Accordingly, Stonetrust sought payment for medical expenses and indemnity benefits it had paid or would become obligated to pay to Collins or on his behalf in connection with or as a result of the alleged incident.

On May 2, 2016, Todd Collins and Carletria Wheeler, on behalf of the minor child, Carleigh Todd Collins, also filed a petition for damages as a result of the alleged incident, naming Harvest Haul, Inc. and Harvest Haul Trucking, L.L.C. and their insurer, Associated Industries Insurance, Inc. as defendants.[1] The Collins plaintiffs asserted the same allegations of negligence raised by Stonetrust in its petition, including Harvest Haul's vicarious liability for the intentional actions of Stevenson as well as Harvest Haul's negligent hiring and training of Stevenson. The Collins plaintiffs' suit was subsequently consolidated with the Stonetrust suit for trial pursuant to a consent judgment signed on November 16, 2016.

---

[1] The Collins plaintiffs also named Stevenson and several additional insurers as defendants; however, these parties are not at issue in the instant appeal.

4

Thereafter, on May 5, 2020, Harvest Haul filed a motion for summary judgment asserting that there is no proof that Harvest Haul, Inc. failed to properly hire and train Stevenson. Harvest Haul further asserted that the alleged physical assault attributed to Stevenson took place outside of the scope of his employment with Harvest Haul, Inc. and therefore, Harvest Haul, Inc. should not be vicariously liable for such activity. Finally, Harvest Haul asserted that Harvest Haul Trucking, L.L.C. was not the employer of Stevenson and was not associated with the alleged incident in any way; therefore, no liability should lie against it. Harvest Haul attached the deposition of Todd Collins and the affidavit of Francisco Montalvo, the owner of Harvest Haul, to its motion. The motion was set for hearing on September 14, 2020.

Stonetrust and the Collins plaintiffs filed oppositions to the motion for summary judgment on August 28, 2020, asserting that genuine issues of material fact existed as to whether the tortious acts were employment rooted and whether the acts were reasonably incidental to the performance of Stevenson's job duties. As such, plaintiffs asserted that the existence of these issues of fact precluded the granting of summary judgment in favor of Harvest Haul.

Thereafter, on September 10, 2020, the Collins plaintiffs filed an unopposed motion for leave to supplement their opposition with the deposition testimony of Mr. Montalvo. According to the motion, the deposition was scheduled but had not been taken at the time of the filing of their opposition. Harvest Haul also filed an unopposed motion for leave to supplement its memorandum in support of its motion for summary judgment with the same deposition testimony.

Following the hearing on Harvest Haul's motion for summary judgment, the trial court signed a judgment: denying the Collins plaintiffs' unopposed motion for leave to supplement the opposition response to Harvest Haul's motion for summary judgment with the deposition testimony of Mr. Montalvo; denying Harvest Haul's

5

unopposed motion for leave to supplement its memorandum in support of its motion for summary judgment with the deposition of Mr. Montalvo; and granting the motion for summary judgment filed by Harvest Haul Trucking, L.L.C. and Harvest Haul, Inc., and dismissing all of the claims filed by the Collins plaintiffs and Stonetrust against these defendants with prejudice. The trial court designated the judgment as a final judgment pursuant to La. C.C.P. art. 1915.

The Collins plaintiffs and Stonetrust now appeal from the trial court's judgment, asserting that the trial court abused its discretion when it denied the Collins plaintiffs' unopposed motion for leave to supplement their opposition with the deposition of Mr. Montalvo and erred in dismissing their vicarious liability claims against Harvest Haul, Inc.[2]

## DISCUSSION

### Motion for Summary Judgment Standard

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 750.

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings,

---

[2] We note that the Collins plaintiffs and Stonetrust do not appeal the trial court's dismissal of their claims against Harvest Haul Trucking, L.L.C., as there was no dispute that Harvest Haul Trucking, L.L.C. was not Stevenson's employer. Likewise, the Collins plaintiffs and Stonetrust do not raise as error the trial court's dismissal of their claims against Harvest Haul, Inc. for negligent hiring and training of Stevenson. Accordingly, we limit our review to the evidentiary issue and the issues raised with regard to the dismissal of plaintiffs' vicarious liability claims against Harvest Haul, Inc.

memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if the mover will not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1); Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 4 (La. 6/30/00), 764 So. 2d 37, 39; Jenkins v. Hernandez, 19-0874, p. 4 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 20-00835 (La. 10/20/20), 303 So. 3d 315. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); Mercadel v. State Through Department of Public Safety and Corrections, 18-0415 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404 *6. The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); see also La. C.C.P. art. 966, comments-2015, comment (j). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. Babin, 00-0078 at p. 4, 764 So. 2d at 40; Jenkins, 19-0874 at p. 5, 305 So. 3d at 371.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Succession of Hickman v. State Through Board of Supervisors of Louisiana State University Agricultural

and Mechanical College, 16-1069, p. 5 (La. App. 1st Cir. 4/12/17), 217 So. 3d 1240, 1244.

**Evidence in Opposition to Motion For Summary Judgment**

The plaintiffs assert that the trial court erred in failing to grant their motion to supplement their opposition with the deposition of Mr. Montalvo and in failing to consider same in ruling on Harvest Haul's motion for summary judgment. Plaintiffs contend that the deposition was a supplement to Mr. Montalvo's affidavit submitted by Harvest Haul in support of its motion for summary judgment and as such, was properly submitted pursuant to La. C.C.P. art. 967(A).

Louisiana Code of Civil Procedure article 967(A) provides:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

However, we note that while Article 967 permits a court to allow for affidavits to be supplemented by depositions, such supplementation must still be timely. See Raborn v. Albea, 16-1468, p. 13 (La. App. 1st Cir. 5/11/17), 221 So. 3d 104, 112. Louisiana Code of Civil Procedure art. 966(B)(2) mandates that an opposition to a motion for summary judgment, *along with all documents in support of the opposition*, must be filed no less than fifteen days prior to the hearing on the motion.[3] The time limitation established by La. C.C.P. art. 966(B) for the filing and serving

---

[3] The 2015 Revision comments to La. C.C.P. art. 966, comment (d), make clear that the time periods set forth in La. C.C.P. art. 966, including the time period for filing or opposing motions for summary judgment, supersede Rule 9.9 of the District Court Rules. The revision comments further note that while La. C.C.P. art. 966 recognizes the ability of the trial court and all of the parties to enter in to a case management or scheduling order or other order to establish deadlines different from those provided by this Article, these orders may not shorten the period of time allowed for a party to file or oppose a motion for summary judgment under this Article.

of evidence in opposition to a motion for summary judgment is mandatory; evidence not timely filed and served can be ruled inadmissible and properly excluded by the trial court. Buggage v. Volks Constructors, 06-0175, p. 1 (La. 5/5/06), 928 So.2d 536, 536 (per curiam).

In denying the Collins plaintiffs' motion for leave to supplement their opposition, the trial court noted that the supplemental opposition, which attached the deposition of Mr. Montalvo, was not filed timely in accordance with La. C.C.P. art. 966(B)(2). The motion for leave to supplement was filed on September 10, 2020, just four days prior to the scheduled hearing on Harvest Haul's motion for summary judgment and over four months after Harvest Haul filed its motion for summary judgment. Therefore, because the supplemental opposition was not filed within the mandatory time limitations set forth in La. C.C.P. art. 966(B)(2), we do not find that the trial court abused its discretion in denying plaintiffs' motion.

**Vicarious Liability**

An employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. LeBrane v. Lewis, 292 So. 2d 216, 217 (La. 1974). According to La. C.C. art. 2320, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." The Louisiana Supreme Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the "tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment[-] duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest[s]." Barto v. Franchise Enterprises, Inc., 588 So.2d 1353, 1356 (La. App. 2nd Cir. 1991), writ denied, 591 So. 2d 708 (La. 1992) (quoting LeBrane, 292 So.2d at 217 and 218).

9

An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Baumeister v. Plunkett, 95-2270, p. 3 (La. 5/21/96), 673 So. 2d 994, 996. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. Baumeister, 95-2270 at pp. 3-4, 673 So. 2d at 996.

In LeBrane, 292 So. at 218, the supreme court considered the following factors in determining whether vicarious liability should be imposed:

(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.

It is not necessary for all four of these factors to be present before liability may be found. Baumeister, 95-2270 at p. 4, 673 So. 2d at 997. The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment. Baumeister, 95-2270 at p. 4, 673 So. 2d at 997.

In the instant case, Harvest Haul sought summary judgment on the basis that plaintiffs are unable to establish that the physical assault by Stevenson occurred within the course and scope of Stevenson's employment. Particularly, Harvest Haul asserted that the alleged incident did not occur on the employer's premises, was not primarily employment rooted, and was not reasonably incidental to the performance of Stevenson's duties.

In support of its motion, Harvest Haul submitted the deposition testimony of Collins and the affidavit of Mr. Montalvo. The uncontradicted deposition testimony of Collins stated that on the date of the incident, Collins was delivering timber to Georgia Pacific for his employer, who, according to Collins, paid Collins per day regardless of the number of loads he delivered. Collins stated that he had been

waiting in a line to unload his timber at Georgia Pacific for approximately two hours prior to the incident. According to Collins, trucks routinely wait in line at the paper mill to unload their timber, but the line was long and moving slow on the date of the incident. Collins stated that a gap of about six truck-lengths formed in the line when the truck driven by Stevenson did not move forward. Collins stated that several trucks exiting Georgia Pacific blew their horns at Stevenson to get his attention, but Stevenson did not move. When asked why none of these truck drivers stopped and got out to check on Stevenson, Collins responded that "[t]ime is money" and "the early bird get[s] the worm"; if a driver falls asleep, that is his loss. Collins stated that he ultimately decided to go around Stevenson, which was a common practice. As Collins drove by, he noticed that Stevenson was asleep and he blew his horn. When Stevenson did not respond, Collins proceeded around him. Thereafter, when Stevenson awoke, he demanded to know over the CB radio who the first person was to pass him in the line. Upon discovering it was Collins who first passed him, Stevenson drove his truck to the front of the line alongside of Collins and demanded his spot back over the CB radio. When Collins told Stevenson he was unable to regain his spot in line, Stevenson backed his truck up approximately five truck-lengths, got out of his truck with a metal pipe, and walked towards Collins's truck. When Stevenson approached Collins's truck, he started arguing with him, opened Collins's door, and spat on Collins. Collins exited his truck, whereupon Stevenson hit Collins several times with the metal pipe. Collins stated that the he did not know Stevenson prior to this incident.

Mr. Montalvo's affidavit further established that Harvest Haul, Inc. employed Stevenson and assigned him to transport timber from a timber-cutting site to Georgia Pacific on the date of the incident. As a matter of policy, Harvest Haul, Inc. had never placed a limit on the amount of time a tractor-truck and trailer operator should take to travel from a timber-cutting site to the mill and back. Furthermore, Harvest

11

Haul, Inc. did not place a daily quota on the number of loads a tractor-truck and trailer operator should transport from a timber-cutting site to the mill. Accordingly, Mr. Montalvo stated that Harvest Haul, Inc. had no interest in Stevenson regaining his spot in line and did not instruct Stevenson to regain his spot in line. In fact, Mr. Montalvo stated that Stevenson's actions on the date of the incident prevented Harvest Haul, Inc. from fulfilling its business objective of delivering cut timber, as Harvest Haul, Inc. had to obtain another driver and arrange for the driver to travel to Georgia Pacific before the timber on Stevenson's truck could be unloaded. Finally, Mr. Montalvo stated that Harvest Haul Inc.'s Business Safety Program and Policies, which were signed by Stevenson in 2012, provide that workplace violence or hostile behavior will not be tolerated.

It is undisputed that the incident at issue occurred during employment hours. However, even assuming for purposes of argument that the incident occurred on the employer's premises, we fail to find, based on the specific, undisputed facts of this case, that Stevenson's actions were primarily employment-rooted or were reasonably incidental to the performance of his duties.

To be "primarily employment-rooted" courts look to the degree to which the tortious act was prompted by an employee's purely personal considerations as opposed to an employee's duties and the employer's interests. Guy v. Mitchell, 35,713, p. 6 (La. App. 2nd Cir. 3/1/02), 810 So. 2d 1245, 1248. The undisputed facts establish that Stevenson was waiting in line to deliver a load of logs for Harvest Haul, Inc., which did not set a time limit for Stevenson to make his delivery or set a quota for the amount of loads he was to deliver. Despite this policy, Stevenson became angry after falling asleep while waiting to deliver his load and discovering that he lost his spot in line and demanded to know who the first person was to pass him in line. Thereafter, once Stevenson was refused his spot back in line, moved his truck back five truck-lengths, got out of his truck, and walked back to Collins's truck

12

with a metal pipe, he ceased to be in furtherance of his employer's objective. At that point, the confrontation was no longer about serving his employer's interest of delivering the load of logs; it was about doing harm to Collins. As such, we do not find that the facts establish that Stevenson's tortious conduct was employment rooted.

Likewise, we do not find that Stevenson's tortious conduct was incidental to the performance of his job duties as a truck driver. It is clear that Stevenson's job duties involved driving a truck and delivering logs to Georgia Pacific. The likelihood that a truck driver employee would become angry after falling asleep and losing his place in line and would exit his truck and walk up to the driver of another truck and hit that driver with a metal pipe is not a risk of harm fairly attributable to the performance of the employee's duties. Furthermore, while Harvest Haul, Inc. did have a policy against workplace violence, said policy listed other prohibited actions such that the policy cannot be said to be one from which a fair inference can be drawn that fighting or workplace violence was a risk of harm fairly attributable to Harvest Haul's business. Rather, the fair inference is that Harvest Haul, through its policy, simply was attempting to make employees aware of the employee behavior standards required by the employer. See Guy, 35,713 at p. 9, 810 So. 2d at 1249-50.

Therefore, based on our review of the record and the specific facts of this case, we find that Harvest Haul, Inc. proved that there was an absence of factual support for the plaintiffs' vicarious liability claim and that the plaintiffs failed to produce factual evidence sufficient to establish that they would be able to satisfy their evidentiary burden at trial. Therefore, the trial court did not err in determining that there is no genuine issue of material fact and that Harvest Haul, Inc. was entitled to summary judgment as a matter of law in its favor and to the dismissal of the Collins plaintiffs' and Stonetrust's claims against it with prejudice.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed equally to plaintiffs/appellants, Todd Collins and Carletria Wheeler, on behalf of the minor child, Carleigh Todd Collins, and Stonetrust Commercial Insurance Company.

**AFFIRMED.**