STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 1370

MARION FELPS

VERSUS

LANDMARK EVENT STAFFING SERVICES, INC., REDWOOD FIRE AND
CASUALTY COMPANY AND JOHN H. WILLIAMS

**Judgment Rendered:** 'AUG 3 1 2022

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C664161

Honorable Trudy White, Presiding

* * * * * *

Brandon Brown        Marcus J. Plaisance    Counsel for Plaintiff/Appellant
Jeffrey N. Rabb      Mark D. Plaisance      Marion Felps
James H. Peltier, Jr.  Prairieville, LA
Baton Rouge, LA

Samuel M. Rosamond, III                     Counsel for Defendant/Appellee
Jonathan B. Womack                          Redwood Fire & Casualty Insurance
Francis C. Cannone                          Company
New Orleans, LA

Jill R. Menard       C. Michael Pfister     Counsel for Defendant/Appellee
Foster P. Nash       Guyton H. Valdin, Jr.  Landmark Event Staffing Services,
New Orleans, LA      Metairie, LA           Inc.

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

**GUIDRY, J.**

Plaintiff, Marion Felps, appeals from a trial court judgment granting summary judgment in favor of Landmark Event Staffing Services, Inc. (Landmark) and Redwood Fire & Casualty Insurance Company (Redwood) and dismissing his claims against them with prejudice. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On January 21, 2017, Felps was employed as a security supervisor for Landmark, a company that provides event staff and security at Louisiana State University (LSU) Events. On that particular date, Felps was working as a supervisor at an indoor track and field event taking place at the Maddox Field House (Field House) on LSU's campus. John Williams, who was also employed by Landmark, was working as a security employee at the track and field event and was being supervised at that event by Felps. Williams and a female Landmark employee were assigned to a table where they were responsible for checking in athletes. At some point during the track meet, the female Landmark employee informed Felps that Williams needed to speak with him. Thereafter, Williams also told Felps that he needed to speak with him. When Felps told Williams that he could speak with him, Williams directed Felps out a side door to the building, claiming it was too loud inside the Field House. Once outside, Williams told Felps he was "being disrespected" and demanded that Felps "make [him] a supervisor." Felps refused, informing Williams that Williams needed to speak with Landmark because it is the one who approves and decides who will be made a supervisor. Williams thereafter demanded that Felps pay him the difference in the money and that Felps could collect the money from Landmark the next day. Felps refused. After informing Williams that he was not going to get supervisor pay and that Felps was not going to pay him any money, Felps attempted to return inside. However, before he could go, Williams hit Felps on the side of the head and took off running.

2

Thereafter, Felps filed a petition for damages naming Williams, Landmark, and Redwood, Landmark's insurer, as defendants. Felps alleged he and Williams were employees of Landmark and that while having a discussion regarding employment related concerns, Williams struck Felps resulting in brain injury. Felps alleged that Landmark was vicariously liable for the battery committed by its employee, Williams.

Landmark answered the petition raising several affirmative defenses. Additionally, Landmark filed a motion for summary judgment, asserting that the alleged altercation took place outside the scope of Williams's employment with Landmark and therefore, Landmark cannot be vicariously liable for Williams's actions. Particularly, Landmark asserted that the battery was not employment rooted, reasonably incidental to Williams's duties, or in the ambit of Williams's assigned duties. Landmark attached excerpts of Felps's deposition as well as excerpts of the deposition of Michael Gentilli, Landmark's Vice President of development and operations.

Redwood also filed a motion for summary judgment. Redwood asserted that Felps had filed suit against Redwood as the alleged insurer of Landmark. Redwood further alleged that because it had been sued pursuant to the Direct Action Statute, La. R.S. 22:1269, as the alleged liability insurer of Landmark, the direct action statute permits a right of action against a liability insurer only if the plaintiff possesses a substantive cause of action against the insured. Therefore, Redwood asserted, for the reasons set forth by Landmark in asserting that it is entitled to dismissal of Felps's claims against it, Redwood is likewise entitled to dismissal of any claims filed against Redwood. Redwood adopted Landmark's memorandum in support of its motion for summary judgment and exhibits attached thereto.

Following a hearing on the motions for summary judgment, the trial court found that the tortious act was not primarily employment rooted and that Williams

3

was not acting in the scope his employment. As such, the trial court found that Landmark was not vicariously liable. The trial court signed a judgment on June 26, 2021, granting the motions for summary judgment filed by Landmark and Redwood and dismissing Felps's claims against them with prejudice. Felps now appeals from the trial court's judgment.

## DISCUSSION

### Summary Judgment

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). An issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, pp. 26-27 (La. 7/5/94), 639 So. 2d 730, 750-751.

The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. La. C.C.P. art. 966(D)(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). The mover's supporting documents must prove the essential facts necessary to carry the mover's burden.

Once the mover properly establishes the material facts by its supporting documents, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if he will not bear the burden of proof at trial. La. C.C.P. art. 966(D)(1); Jenkins v. Hernandez, 19-0874, p. 4 (La. App. 1st Cir. 6/3/20), 305 So. 3d 365, 371, writ denied, 20-00835 (La. 10/20/20), 303 So. 3d

4

315; <u>Babin v. Winn-Dixie Louisiana, Inc.</u>, 00-0078, p. 4 (La. 6/30/00), 764 So. 2d 37, 39. The moving party must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 332, 106 S. Ct. 2548, 2557, 91 L. Ed. 2d 265 (1986); <u>Mercadel v. State Through Department of Public Safety and Corrections</u>, 18-0415 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404 *5-6 (unpublished). The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); <u>see also</u> La. C.C.P. art. 966, comments-2015, comment (j). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966(D)(1) mandates the granting of the motion for summary judgment. <u>Jenkins</u>, 19-0874 at p. 5, 305 So. 3d at 371; <u>Babin</u>, 00-0078 at p. 4, 764 So. 2d at 40. In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. <u>Succession of Hickman v. State through Board of Supervisors of Louisiana State University Agricultural and Mechanical College</u>, 16-1069, p. 5 (La. App. 1st Cir. 4/12/17), 217 So. 3d 1240, 1244.

**Vicarious Liability**

An employer is liable for the torts committed by his employee if, at the time, the employee was acting within the course and scope of his employment. <u>Baumeister v. Plunkett</u>, 95-2270, p. 3 (La. 5/21/96), 673 So. 2d 994, 996. The two terms are not synonymous. The course of employment test refers to the time and place. The scope of employment test examines the employment-related risk of injury. <u>Benoit v. Capitol Manufacturing Company</u>, 617 So. 2d 477, 479 (La. 1993).

5

In order for an employer to be vicariously liable for the tortious acts of its employees, the employee's tortious conduct must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. Richard v. Hall, 03-1488, p. 6 (La. 4/23/04), 874 So. 2d 131, 138; Ellender v. Neff Rental, Inc., 06-2005, p. 5 (La. App. 1st Cir. 6/15/07), 965 So. 2d 898, 901.

In an analysis of vicarious liability for an employee's tortious acts, the court must consider more than simply whether the employee was in the course and scope of employment at the time of the incident. An employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. Baumeister, 95-2270 at pp. 3-4, 673 So. 2d at 996; Honor v. Tangipahoa Parish School Board, 13-0298, p. 7 (La. App. 1st Cir. 11/1/13), 136 So. 3d 31, 36, writ denied, 14-0008 (La. 2/28/14), 134 So. 3d 1181.

In determining whether vicarious liability applies, courts consider the following factors:

1. Whether the tortious act was primarily employment rooted;

2. Whether the act was reasonably incidental to the performance of the employee's duties;

3. Whether the act occurred on the employer's premises; and

4. Whether the act occurred during the hours of employment.

Baumeister, 95-2270 at p. 4, 673 So. 2d at 996-997; see also LeBrane v. Lewis, 292 So. 2d 216, 218 (La. 1974). However, this does not mean that all four factors must be met before liability may be found. The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the

6

course and scope of his employment. <u>Varnado v. Department of Employment and Training</u>, 95-0787 (La. App. 1st Cir. 12/30/96), 687 So. 2d 1013, 1041 (on rehearing) (per curiam), <u>writ denied</u>, 97-0312 (La. 3/27/97), 692 So. 2d 394. The emphasis in determining whether an intentional tort is employment related is on the motives and actions of the tortfeasor employee. <u>Wearrien v. Viverette</u>, 35,446, p. 12 (La. App. 2nd Cir. 12/5/01), 803 So. 2d 297, 303.

In the instant case, it is undisputed that the battery occurred during hours of employment and on the employer's premises. Rather, in seeking summary judgment, Landmark asserted that the battery was not employment rooted or reasonably incidental to Williams's duties as an event security person. Landmark attached excerpts from Felps's deposition, asserting that based on this testimony, the altercation at issue was the result of Williams's purely personal motivation to obtain a promotion or to get money directly from Felps. Furthermore, Landmark asserted that Williams's job duties, which on the day of the event involved checking in athletes, did not include physically threatening, assaulting, or punching co-employees. As such, Landmark asserted that the battery committed by Williams on Felps was neither employment rooted or reasonably incidental to the performance of Williams's duties as an event security person and therefore, it was outside the scope of his employment with Landmark.

In support of its argument, Landmark cited multiple cases wherein the court found the employer was not liable for the intentional torts of its employee. <u>Honor, v. Tangipahoa Parish School Board</u>, 13-0298 (La. App. 1st Cir. 11/1/13), 136 So. 3d 31 (employee's act of pinning a co-employee against the wall and striking the employee in the face during a fight over personal custodial equipment not within the ambit of employee's assigned duties or in furtherance of employer's objective); <u>Dickerson v. Piccadilly Restaurants, Inc.</u>, 99-2633 (La. App. 1st Cir. 12/22/00), 785 So. 2d 842 (fight between two co-employees over a personal toolbox erupted for

7

purely personal reasons and was not actuated by any purpose of employer); Ryback v. Belle, 98-2766 (La. App. 1st Cir. 2/18/00), 753 So. 2d 383, writ denied, 00-0749 (La. 5/12/00), 762 So. 2d 14 (jury reasonable in finding employee's attack on co-employee who accidentally shut a freezer door on him was not incidental to the employee's duties); Guy v. Mitchell, 35,713 (La. App. 2nd Cir. 3/1/02), 810 So. 2d 1245 (physical attack on co-employee, who reported comments made by employee to supervisor, not reasonably incidental to the performance of employee's job duties); Eichelberger v. Sidney, 34,040 (La. App. 2nd Cir. 11/3/00), 771 So. 2d 863, writ denied, 00-3476 (La. 2/9/01), 785 So. 2d 827 (hair salon receptionist's attack on hair stylist when stylist attempted to play a video for a client's child was not employment rooted nor was it incidental to the performance of the receptionist's duties); Watkins v. International Service Systems, 32,022 (La. App. 2nd Cir. 6/16/99), 741 So. 2d 171, writ denied, 99-2129 (La. 10/29/99), 749 So. 2d 640 (subordinate employees act of stealing radios was not within employment duties as a janitor and while supervisor was functioning within his duties in suspending employee, employee's response of kicking his supervisor was not rooted in an employment endeavor); Barto v. Franchise Enterprises, Inc., 588 So. 2d 1353 (La. App. 2nd Cir. 1991), writ denied, 591 So. 2d 708 (La. 1992) (employee's act of stealing money and assaulting supervisor during a subsequent investigation was beyond the course and scope of his employment because function as cook did not include stealing money and theft was clearly motivate by employee's own personal motives); Hubbard v. Lakeland Nursing Home, 98-1893 (La. App. 3rd Cir. 5/19/99), 734 So. 2d 1280, writ denied, 99-1705 (La. 10/1/99), 748 So. 2d 442 (employee's action of striking supervisor motivated by desire to further employee's personal interest, which was to injure supervisor for sending employee home, not to defend her civil rights or the rights of her co-workers); Cager v. Williams, 03-212 (La. App. 4th Cir. 11/12/03), 861 So. 2d 239, writ denied, 03-3424 (La. 2/20/04), 866 So. 2d

8

833 (employee's battery and shooting of co-employee while employed by armored truck company not employment rooted, incidental to the performance of either employee's duties or in furtherance of the employer's interest); Pye v. Insulation Technologies, Inc., 97-237 (La. App. 5th Cir. 9/17/97), 700 So. 2d 892, writ denied, 97-2571 (La. 12/19/97), 706 So. 2d 461 (subordinate employee's battery of his supervisor in response to criticism of his work performance not employment rooted).

In opposing the summary judgment, Felps submitted the entirety of his deposition. Felps stated that he was employed by Landmark as a supervisor, and his responsibilities included making sure the Landmark employees working events had correct information for where they had to work and showing employees what to do. On the date of the incident, Felps was the head supervisor for Landmark at the Field House, and he was supervising Williams, who was employed by Landmark as a security employee. This was the first occasion that Williams had worked for Felps, and Felps did not know Williams prior to this event. Williams and a female Landmark employee were assigned to work at the clerk of court's table checking in athletes. Felps stated that the female employee working with Williams and Williams both told him that Williams needed to speak with him. Thereafter, Felps stated that when he told Williams that he could speak with him, Williams grabbed him by the arm and directed him outside the Field House because it was too loud in there. Felps stated once the pair was outside, Williams continued to direct him toward the side of the building until finally Felps demanded that Williams tell him what he wanted. Felps stated at that point, Williams told him that he was "being disrespected," whereupon Felps asked Williams if someone had said something to him, to which Williams responded "no." Rather, Williams told Felps that he "needed to be made a foreman, and you need to make me a supervisor." Felps stated that he told Williams that was "not going to happen" and that Williams needed to talk to Landmark about that because it is the one that approves and makes those types of

9

decisions. Felps stated that Williams told Felps to give him the difference in the money and Felps could collect the money from Landmark the next day, but Felps stated he told Williams that was "not going to happen either." Felps stated that thereafter, the building door opened and he told Williams "I got to get back in there … You are not going to get supervisor pay. I'm not going to give you the money." According to Felps, as he turned to return inside, Williams told him to "wait a minute" and that he had "one more thing" and as Felps turned back around, Williams hit him in the side of the head and took off running.

Additionally, Felps submitted the deposition testimony of Michael Gentilli, the Vice President of Development and Operations for Landmark. Gentilli reiterated that Felps was responsible for making sure Williams was doing his job and that Williams could go to Felps if he had a complaint about the job or had a request related to the job.

Felps also relied on Cowart v. Lakewood Quarters Limited Partnership, 06-1530 (La. App. 1st Cir. 5/4/07), 961 So. 2d 1212 and Garcia v. Lewis, 50,744 (La. App. 2nd Cir. 6/22/16), 197 So. 3d 738, writ denied, 16-1382 (La. 11/7/16), 205 So. 3d 891, as supporting the legal proposition that when a dispute stems from work-related matters, it is employment rooted. In Cowart, a Certified Nursing Assistant Director was beaten by an employee after receiving complaints about the employee and advising the employee if she didn't step down to a regular position, she would have to terminate her. This court found that "it is patent that the attack was employment-rooted and was reasonably incidental to [the employee's] employment duties, since her duties implicitly included being counseled by her superiors regarding complaints about her job performance and the actions to be taken as a result of those complaints." 06-1530 at p. 5, 961 So. 2d at 1215. Also, in Garcia, an employee was beaten by a co-employee after the employee reported a violation of company policy by the co-employee to superiors. Finding that the intent of the

10

assaultive employee is critical, the Second Circuit reversed a summary judgment in favor of the employer, finding that whether the co-employee's conduct was employment rooted and reasonably incidental to the performance of his duties hinges on the predominant motive of the tortfeasing employee and questions of motive are often unsuited for summary judgment disposition. 50,744 at p. 10, 197 So. 3d at 743-44.

From our review of the evidence in the record and an examination of the cases relied on by both parties, we find, much like the court in Garcia, that the limited facts presented do not conclusively establish Williams's motive as being purely personal or anything other than his a desire to be made a supervisor rather than a regular security employee and receive an increase in pay.[1] Williams went to his immediate supervisor, who was the overall supervisor for Landmark at that event and was responsible for telling employees where they needed to work, to discuss his dissatisfaction with being a regular security employee and his request to be made a supervisor. When Felps refused and told Williams that Landmark, and not he, made those decisions, Williams told Felps to pay him the supervisor's pay and get the money from Landmark the next day. When Felps told Williams "that was not going to happen either," an angry Williams struck Felps on the side of the head.

Furthermore, because the only evidence in the record establishes that the altercation at issue was a direct response to Williams's request to be promoted to a supervisor and receive supervisor's pay and Felps's denial of that request, we find that a genuine issue of material fact exists as to whether the dispute was employment rooted. As evidenced by Felps's testimony, a supervisor not only received more pay but had duties and responsibilities different from a regular security employee. Furthermore, Gentilli confirmed that Williams could speak with his supervisor,

---

[1] While Felps offered his own opinion as to Williams's intentions or motives, he acknowledged that they were just his opinions and were merely speculation on his part.

11

Felps, about any complaints regarding the job or any job-related requests. Feeling dissatisfied with his current job position and requesting a promotion and increased pay are arguably such complaints and job-related requests.

Therefore, because we find a reasonable jury could conclude, based on the evidence in the record, that the altercation at issue was employment rooted, we find there exists a genuine issue of material fact as to whether Landmark is vicariously liable for the battery committed by Williams and the trial court erred in granting summary judgment in favor of Landmark.

**Motion for Judgment and Exception of No Right of Action-Redwood**

Redwood also filed a motion for summary judgment, alleging it had been sued pursuant to the Louisiana Direct Action Statute, La. R.S. 22:1269, as the alleged liability insurer of Landmark, but that the statute only permits a direct right of action against a liability insurer if the plaintiff possesses a substantive right of action against the insured. Redwood then alleged, as Landmark's insurer, that it was entitled to the dismissal of all claims against it "for the reasons set forth by Landmark that it is entitled to dismissal of claims against it." Redwood then stated that it "adopt[ed] the Memorandum in Support of Motion for Summary Judgment, and exhibits, filed by Landmark, as if copied herein *in extenso*."

Accordingly, because Redwood's basis for summary judgment was dependent upon the granting of summary judgment in favor of Landmark, and we have determined that the trial court erred in granting summary judgment in favor of Landmark, we likewise find that the trial court erred in granting summary judgment in favor of Redwood.[2]

---

[2] Because we find that the trial court erred in granting summary judgment in favor of Landmark and Redwood, we pretermit a discussion of Redwood's failure to submit evidence in support of its motion for summary judgment and instead, adopting the argument and evidence submitted by Landmark in support of its motion for summary judgment.

Furthermore, we note that Redwood has also filed an exception raising the objection of no right of action in this court alleging that Felps has no right to proceed against Redwood if the claims against Landmark have been dismissed. Having found that the trial court erred in granting summary judgment in favor of Landmark and dismissing Felps's claims, we overrule Redwood's exception.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand this matter for further proceedings. We also overrule Redwood's exception raising the objection of no right of action filed on appeal. All costs of this proceeding are assessed equally to Landmark Event Staffing Services, Inc. and Redwood Fire and Casualty Insurance Company.

**REVERSED AND REMANDED; EXCEPTION OF NO RIGHT OF ACTION OVERRULED.**